[This opinion has been published in *Ohio Official Reports* at 81 Ohio St.3d 543.]

THE STATE OF OHIO, APPELLANT, *v*. GOLPHIN, APPELLEE.

[Cite as *State v. Golphin*, 1998-Ohio-336.]

*Criminal law—Murder—Juvenile law—Bindover of juvenile as adult—Juvenile court fails to accomplish a legal transfer of its jurisdiction when there is no evidence in the record that a physical examination of the juvenile was performed as required by former R.C. 2151.26 and former Juv.R. 30.*

(No. 96-2865—Submitted January 14, 1998—Decided April 29, 1998.)

APPEAL from the Court of Appeals for Cuyahoga County, No. 69266.

————————————

{¶ 1} In October 1994, appellant, Tommie Golphin, aged seventeen, was charged with juvenile delinquency in connection with the shooting of Clinton Butler. The complaint charged Golphin with committing acts which constituted felonious assault, having a weapon while under disability, and discharging a weapon into a habitation. After Butler's death, the complaint was amended to include a charge that Golphin's acts also constituted the crime of murder. The juvenile court subsequently found probable cause to believe that Golphin committed the acts charged in the complaint, as amended, and continued the matter for a full investigation in accordance with R.C. 2151.26 and Juv.R. 30(B).

{¶ 2} On January 18, 1995, the juvenile court held an amenability hearing pursuant to R.C. 2151.26 and Juv.R. 30. At the hearing, the state introduced evidence of Golphin's mental condition through the testimony of a psychiatrist. The state conceded in its brief and at oral argument,[1] however, that no physical examination of

————————————

1. The following interchange took place in this court between the bench and counsel for the state at the oral argument of this cause:

"Q: It's not disputed, is it, that no physical exam was done?

"A: That's correct, your honor."

Golphin was performed prior to the amenability hearing, nor was any other evidence of Golphin's physical condition introduced.[2]   Moreover, the record reflects that Golphin's counsel specifically objected at the conclusion of the amenability hearing to the state's failure to produce evidence of a physical examination.[3]   Nevertheless, the juvenile court ultimately entered an order on January 25, 1995 purporting to transfer jurisdiction of the matter to the general division of the court of common pleas.

{¶ 3} Golphin was thereafter indicted for the crimes of aggravated murder, accompanied by a firearm specification, and having a weapon while under disability. He was tried as an adult and convicted in common pleas court of the crime of murder and of the firearm specification.  He was sentenced to serve an aggregate sentence of eighteen years to life in the adult prison system.

---

2. Included in the papers transmitted to us by the court of appeals is a "Motion to Supplement Record and for Reconsideration" filed by the state thirty-two days after the announcement of the court of appeals' decision.  That filing was well after the deadline by which motions for reconsideration may be filed pursuant to App.R. 26(A).  The state attached as exhibits to its motion two copies of what are represented to be reports of physical exams conducted of Golphin at the juvenile detention center.  In a memorandum in support of its motion, the prosecutor stated that "[a] recent search of the records of the Cuyahoga County Juvenile Court Detention Center revealed" the two documents.  The documents were not supported by sworn affidavits, are largely illegible, and, as a legal matter, constitute pure hearsay.

　　Subsequently the court of appeals denied the state's motion.  As a result, the purported reports of physical examinations, although transmitted to us by the court of appeals, never became part of the record of this cause.  The reports were never proffered as evidence, never accepted into evidence, and do not constitute legal proof of any fact.

　　We are precluded by well-established principles of appellate review from considering these documents in resolving the legal issues before us.  See, *e.g.*, *State v. Phillips* (1995), 74 Ohio St.3d 72, 80, 656 N.E.2d 643, 655, citing *State v. Ishmail* (1978), 54 Ohio St.2d 402, 8 O.O.3d 405, 377 N.E.2d 500, paragraph one of the syllabus.

3. Counsel for Golphin argued in his closing statement at the amenability hearing, "[T]he prosecutors just have not fulfilled their obligations under Juvenile Rule 30.  And without them having fulfilled the requirements of sub-section B, this Court, I believe, is required to overrule their motion because that rule requires a physical examination of the child by a public or private agency or by a person qualified to make an examination and they have presented no evidence at all of a physical exam.  And for that technical reason, we also urge, since it does say shall with the rule, says shall, it doesn't say may, it says shall.  We believe that they failed to meet their burden because of that omission and for those reasons we would ask that the motion be overruled."

**{¶ 4}** On appeal, Golphin argued, *inter alia*, that the juvenile court had failed to properly relinquish its jurisdiction over Golphin in that no physical examination had been performed, and that the common pleas court thereby lacked jurisdiction to conduct criminal proceedings against him. The court of appeals agreed, and reversed and remanded the cause.

**{¶ 5}** The cause is now before this court pursuant to the allowance of a discretionary appeal.

———————————

*Stephanie Tubbs Jones*, Cuyahoga County Prosecuting Attorney, and *Edward M. Walsh*, Assistant Prosecuting Attorney, for appellant.

*James A. Draper*, Cuyahoga County Public Defender, and *Scott Roger Hurley*, Assistant Public Defender, for appellee.

———————————

**Moyer, C.J.**

**{¶ 6}** Juvenile courts have exclusive initial subject-matter jurisdiction over any case involving a person alleged to be delinquent for having committed, when younger than eighteen years of age, an act which would constitute a felony if committed by an adult. R.C. 2151.23; 2151.26; *State v. Wilson* (1995), 73 Ohio St.3d 40, 43, 652 N.E.2d 196, 199. Before such an individual may be tried as an adult in common pleas court, the juvenile court must comply with the provisions of R.C. 2151.26 pursuant to procedures established by Juv.R. 30.

**{¶ 7}** On August 30, 1994, when Golphin allegedly shot Clinton Butler, R.C. 2151.26 provided:

"(A)(1) * * * [A]fter a complaint has been filed alleging that a child is a delinquent child for committing an act that would constitute a felony if committed by an adult, the court at a hearing may transfer the case for criminal prosecution to the appropriate court having jurisdiction of the offense, after making the following determinations:

"* * *

"(c) After an investigation, *including a mental and physical examination of the child made by a public or private agency or a person qualified to make the examination*, and after consideration of all relevant information and factors, * * * that there are reasonable grounds to believe that:

"(i) He is not amenable to care or rehabilitation * * * in any facility designed for * * * delinquent children;

"(ii) The safety of the community may require that he be placed under legal restraint * * *." (Emphasis added.) 144 Ohio Laws, Part II, 2745-2746.

{¶ 8} This statute, in effect both at the time of the shooting and at the time of Golphin's amenability hearing, thus clearly mandated that a juvenile be given a physical examination by a qualified person prior to relinquishment of juvenile court jurisdiction.

{¶ 9} Similarly, Juv. R. 30(B) provided at the relevant times:

"If the court finds probable cause, it shall continue the proceedings for full investigation. *The investigation shall include a mental and physical examination* of the child by a public or private agency or by a person qualified to make the examination." (Emphasis added.)

{¶ 10} The procedure used by the trial court here violated an express act required by a statute adopted by the General Assembly and a rule adopted by the Supreme Court.

{¶ 11} Moreover, Juv.R. 30(F) provided, "In determining whether the child is amenable to the treatment or rehabilitative processes available to the juvenile court, *the court shall consider* the following relevant circumstances: * * * (1) *The child's* age and mental and *physical condition* * * *." (Emphasis added.)

{¶ 12} We have repeatedly recognized that use of the term "shall" in a statute or rule connotes the imposition of a mandatory obligation unless other language is included that evidences a clear and unequivocal intent to the contrary. See, *e.g.,*

4

*Dorrian v. Scioto Conservancy Dist.* (1971), 27 Ohio St.2d 102, 56 O.O.2d 58, 271 N.E.2d 834, paragraph one of the syllabus*; State v. Pless* (1996), 74 Ohio St.3d 333, 658 N.E.2d 766 (criminal statute); *Lakewood v. Papadelis* (1987), 32 Ohio St.3d 1, 4, 511 N.E.2d 1138, 1140-1141 (criminal rule). We have previously held that a statute or rule which uses the word "shall" in describing an act which is to be performed is not generally susceptible of a "substantial compliance" standard of interpretation. See *State v. Pless* at 340, 658 N.E.2d at 770.

**{¶ 13}** The state emphasizes the considerable discretion vested in a juvenile court when determining whether to relinquish its jurisdiction over a juvenile to the court of common pleas, and cites *State v. Watson* (1989), 47 Ohio St.3d 93, 547 N.E.2d 1181, in support. However, *Watson* does not stand for the proposition that a juvenile court has discretion to omit from the record that which is expressly required by statute to be included.

**{¶ 14}** R.C. 2151.26 requires that an investigation be conducted before bindover, and, in 1994 and 1995, the statute expressly required that the background investigation include both a mental and physical examination. It follows that the court's bindover order in the case at bar was, at best, premature. The record fails to show the completion of the full investigation required to be conducted by statute before the court was authorized to make the critical determinations of whether Golphin was amenable to rehabilitation within the juvenile system and whether the safety of the community required that he be placed under legal restraint. See, also, *State v. Douglas* (1985), 20 Ohio St.3d 34, 36, 20 OBR 282, 284, 485 N.E.2d 711, 712 ("*[A]s long as sufficient, credible evidence pertaining to each factor [enumerated in Juv.R. 30 (E)] exists in the record before the court*, the bind-over order should not be reversed in the absence of an abuse of discretion." [Emphasis added.])

**{¶ 15}** Moreover, this court held unanimously in *Gaskins v. Shiplevy* (1995), 74 Ohio St.3d 149, 656 N.E.2d 1282, that a juvenile who alleged that he had been given no mental and physical examination prior to relinquishment of jurisdiction by a

juvenile court stated a claim which, if true, demonstrated that the common pleas court that convicted him of a crime lacked jurisdiction over him. We discern no convincing reason to depart from this existing precedent in resolving the cause before us.

{¶ 16} We acknowledge that the General Assembly amended R.C. 2151.26, effective January 1, 1996, to eliminate the requirement that a juvenile be given a physical examination prior to relinquishment of juvenile court jurisdiction. See R.C. 2151.26(C)(1)(c) (146 Ohio Laws, Part I, 19-20). Similarly, in July 1997, Juv.R. 30 was amended to accord with the new statute by deleting all references to physical examination of juveniles. Nevertheless, the amendments to the controlling statute and rule were made subsequent to the proceedings at issue, and may not be applied retroactively.

{¶ 17} The court of appeals did not err in concluding that the juvenile court failed to accomplish a legal transfer of its jurisdiction in that there is no evidence in the record that a physical examination of Golphin was performed as required by R.C. 2151.26 and Juv.R. 30. The court correctly recognized that the prosecution of Golphin in common pleas court was void *ab initio*. See *State v. Wilson*. It correctly reversed and remanded the cause to the common pleas court with instructions that the judgment of conviction against defendant be vacated. Upon implementation of that mandate, the cause must then be further remanded to the juvenile court for adjudication of the matters raised in the delinquency complaint, including possible resumption of bindover procedures.

{¶ 18} Accordingly, the judgment of the court of appeals is affirmed.

*Judgment affirmed.*

F.E. SWEENEY, PFEIFER and COOK, JJ., concur.

DOUGLAS, RESNICK and LUNDBERG STRATTON, JJ., concur in part and dissent in part.

_____

**ALICE ROBIE RESNICK, J., concurring in part and dissenting in part.**

**{¶ 19}** I concur in the statement of law announced in the majority's opinion today, which is that a physical examination was mandatory under former R.C. 2151.26(A)(1)(c), particularly in light of the fact that former Juv.R. 30(B) provided that an investigation "shall include" a physical examination. However, based on the circumstances of this case, I disagree with the majority's application of the law to the situation before us. I would reverse the judgment of the court of appeals, and therefore dissent in part.

**{¶ 20}** The state's Motion to Supplement Record and for Reconsideration filed in the court of appeals clearly demonstrates that Tommie Golphin underwent two physical examinations on two different dates after he was taken into custody as a suspect in the shooting of Clinton Butler. The prosecutor's office did not raise the existence of the reports pertaining to the physical examinations until after the time for filing a motion for reconsideration had passed in the court of appeals. Therefore, the court of appeals was unable to consider the existence of the physical examinations, and dismissed the state's motion as untimely under App.R. 26. However, we can and should take notice of the physical examinations. Contrary to the majority's assertion in footnote two of its opinion, *State v. Phillips* (1995), 74 Ohio St.3d 72, 80, 656 N.E.2d 643, 655, does not preclude consideration of the physical examination reports. *Phillips* is distinguishable from the situation in the case *sub judice*. The existence of the reports belies the ultimate conclusion of the majority that no physical examination was ever done in this case.

**{¶ 21}** In reaching that conclusion, the majority recounts in footnote one of its opinion a concession made by the state at oral argument before this court. In that concession, the state agreed that "it's not disputed" that a physical examination was not done. However, simply because the state made the tactical decision to argue before this court that substantial compliance would fulfill the terms of the physical examination statute and rule, rather than to pursue arguments based on the

examinations revealed in its motion, does not change the fact that Golphin did undergo two examinations.

{¶ 22} The juvenile court judge noted in his bindover opinion the following factors that former Juv.R. 30 required him to consider in determining amenability to rehabilitation: "(1) The child's age; (2) The child's mental and physical health; (3) The child's prior juvenile record; (4) Efforts previously made to treat or rehabilitate the child; (5) The child's family environment; (6) School record; and (7) The specific facts relating to the offense for which probable cause was found, to the extent relevant to the child's physical or mental condition." Although there is no explicit indication in the record or opinion that the judge had the physical examination results before him, or that he relied on them in any way in his determination to transfer jurisdiction to the general division, in my view the mere fact that physical examinations were done is sufficient to fulfill the requirements of former R.C. 2151.26 and of former Juv.R. 30. Nothing else was specifically required by that statute or rule.

{¶ 23} This case presents a different scenario from that in *State v. Pless* (1996), 74 Ohio St.3d 333, 658 N.E.2d 766. In *Pless*, the statute at issue, R.C. 2945.05, required that a jury trial waiver *must be filed and made a part of the record in the criminal case*. 74 Ohio St.3d at 337, 658 N.E.2d at 769. In contrast, the statute and rule at issue in the case *sub judice* simply required that a physical examination be conducted. There was no requirement that the examination report be made a part of the record. While the physical examination reports here may not have been actually filed with the juvenile court, we now know that Golphin did in fact receive two physical examinations.

{¶ 24} As the dissenter at the court of appeals recognized, the juvenile court judge in this case did an extremely thorough and competent consideration of all *relevant* factors in reaching his decision to transfer jurisdiction. The opinion written by the juvenile court judge was a model of thoughtfulness, with the singular

exception that the physical examination requirement was not specifically addressed.

{¶ 25} Because I believe that the physical examination requirement, even though mandatory under the statute and rule in effect at the time, was a hypertechnical requirement that has since been eliminated from the relevant statute and rule, I would find that the physical examinations performed in this case fulfilled the requirement. The majority acknowledges that the General Assembly amended R.C. 2151.26, effective January 1, 1996, to eliminate the physical examination requirement at issue in this case. Moreover, in July 1997, Juv.R. 30 was amended to delete all references to a physical examination. While I agree with the majority that those amendments may not be applied retroactively, the amendments do clearly demonstrate that the physical examination often is not an important consideration in a juvenile judge's decision on whether to transfer jurisdiction to the general division.

{¶ 26} *Gaskins v. Shiplevy* (1995), 74 Ohio St.3d 149, 656 N.E.2d 1282, cited by the majority, is easily distinguishable from the situation in this case. In *Gaskins*, 74 Ohio St.3d at 150, 656 N.E.2d at 1283, the petitioner alleged that *neither* a *mental* nor a physical examination had been done prior to the bindover. It was the possible lack of a mental examination, more than the lack of a physical examination, that imperiled the common pleas court's jurisdiction in *Gaskins*. A mental examination is an indispensable component underlying a bindover decision and clearly serves an important purpose—it aids in evaluating a juvenile's amenability to treatment within the juvenile justice system. See, generally, *State v. Watson* (1989), 47 Ohio St.3d 93, 547 N.E.2d 1181.

{¶ 27} A physical examination, on the other hand, is not always an important consideration in determining amenability. In the usual case where, as here, the physical condition of the juvenile is not raised as an issue, there is no reason for a juvenile court judge to focus on the physical examination results in

reaching a bindover decision. As mentioned previously, the General Assembly has recognized that a physical examination is not indispensable to the juvenile court judge's bindover consideration by amending R.C. 2151.26 to eliminate the physical examination requirement.

{¶ 28} Moreover, even if we accept the majority's determination that no physical examination was performed based on ignoring the motion the state attempted to file in the court of appeals, there is another reason to find compliance with the requirement in this case. Golphin was examined by a psychiatrist, who is a medical doctor. Any physical impediments material to a bindover would certainly have been noted by the psychiatrist, who, with a medical degree, was capable of fulfilling the physical examination requirement.

{¶ 29} Our conclusion in this case should be the same conclusion as that reached in *State v. Douglas* (1985), 20 Ohio St.3d 34, 36-37, 20 OBR 282, 284-285, 485 N.E.2d 711, 713, in which this court found a bindover properly accomplished in compliance with R.C. 2151.26 and Juv.R. 30. The record here reveals compliance with each aspect of the statute and rule, including the physical examination aspect. A total lack of compliance with the requirement would not constitute substantial compliance. See *State v. Wilson* (1995), 73 Ohio St.3d 40, 652 N.E.2d 196. However, there is not a total lack of compliance in this case, as shown by the two physical examination reports. To vacate this conviction and remand this cause to the juvenile court for a new bindover determination, presumably to include consideration of another physical examination of Golphin, is to elevate the importance of a technicality to new heights. More important, it is a total waste of judicial time and resources, since two physical examinations have already been conducted, as shown by the state's motion.

{¶ 30} For all the foregoing reasons, I would reverse the judgment of the court of appeals, and would remand this cause to the court of appeals for that court to consider the assignments of error found moot and not addressed in its opinion.

DOUGLAS and LUNDBERG STRATTON, JJ., concur in the foregoing opinion.

_____