OPINION
Petitioner Derrick Evans appeals from the judgment of the trial court which denied his petition for post conviction relief from his 1975 convictions for aggravated robbery and murder[1]. For the reasons set forth below, we affirm.
On January 22, 1975, two complaints were filed against petitioner, who was then sixteen years old, in the juvenile court. The first complaint charged petitioner with three counts of aggravated robbery and one count of aggravated murder. The second complaint charged petitioner with an additional count of aggravated robbery. The juvenile court held hearings on the matter on February 6, 1975 and February 24, 1975. Thereafter, the juvenile court transferred jurisdiction of the matter to the general division of the court and petitioner was prosecuted as an adult.
On March 11, 1975, petitioner was indicted on charges of aggravated murder, aggravated robbery, and felonious assault. On May 5, 1975, petitioner was indicted on an additional charge of aggravated robbery. Thereafter, on June 6, 1975, petitioner entered a plea of guilty to one count of murder, a lesser included offense within the first indictment, and a plea of guilty to the charge of aggravated robbery as alleged in the second indictment. In relevant part, the plea proceedings provided:
 MR. DEFENSE COUNSEL: Your Honor, I think the case is of such magnitude and such importance that I think the court ought to be put on notice as to what was done in the case by and on behalf of the two counsels appointed, myself, Mr. Zimmerman, and Mr. Caito, co-counsel with me.
 First of all, we took into consideration the fact that this young man is a juvenile, sixteen years of age. We were extremely careful in evaluating this case with him, considering the indicated records as to what his general IQ was, and his ability to understand and aid and assist counsel.
 We went far beyond that by having the Court appoint an investigator to aid and assist us in procuring evidence and procuring evidence or potential witnesses and helping in aiding and assisting us in evaluating the factual situation in connection with this case. Z
 Not only the defendant but the members of his family understood what was being done. The only other thing I would like to add here, your Honor, is that the Court I am sure will take into consideration his age factor, and of course sentence him to Mansfield rather than to any other institution which I think the Court will do. Mr. Caito may want to say something. (Tr. 10-11)
Petitioner was later sentenced to concurrent terms of fifteen years to life on the murder charge and four to twenty-five years on the aggravated robbery charge.
The trial court ordered that petitioner serve these terms at the Ohio State Reformatory in Mansfield, Ohio. It is undisputed that at all relevant times, R.C. 5143.03 prohibited persons convicted of murder in the first or second degree from serving time at the reformatory. Petitioner was ultimately transferred from the reformatory to the Ohio Penitentiary at Lucasville.
On June 2, 1976, petitioner sought to vacate the judgment of conviction pursuant to R.C. 2953.21. Petitioner asserted that his guilty plea was entered as the result of the unkept promise that he would be sentenced to the reformatory. The trial court held a hearing on the petition. Harry Caito, one of petitioner's trial attorneys, testified that he informed petitioner that there was a statute which precluded those convicted of murder from being sentenced to the reformatory. Caito stated:
 THE WITNESS: That I am sure that I did because of the nature of the problem. While it may have seemed to be a vain act, there was, at least by doing so, there was also, I believe. Judge Stahl's feeling — at least [sic] it a group feeling — that by doing so, we at least might take a long-shot at hoping to get him in Mansfield; that in the future the statute might be ruled unconstitutional; that in the future the statute might be repealed. At least this is a standing order.
 In other words, it is a long-shot. We made that clear to Derrick. But it was at least a long-shot of some kind for him.
The trial court subsequently determined that petitioner had been informed prior to entering his plea, that there was a statute which prohibited him from serving his sentence at the reformatory. He found the plea to be voluntarily, intelligently, and knowingly entered and denied the petition to vacate the judgment of conviction.
Petitioner commenced an appeal to this court in which he asserted that his plea was not voluntarily entered. This court evaluated both the transcript of the plea proceedings and the transcript of the hearing on the motion to vacate. This court rejected the assigned errors and upheld the lower court's finding that petitioner had been informed that it was not certain that he could serve his sentence at the reformatory. See State v. Evans
(Nov. 16, 1978), Cuyahoga App. No. 37719, unreported.
On March 23, 1994, petitioner filed the instant petition to vacate sentence in which he raised eight claims for relief challenging the trial court's acceptance of his guilty plea and the decision of the juvenile court which concluded that he was not amenable to rehabilitation. The trial court denied the petition without a hearing and petitioner now appeals, assigning the following error for our review:
 THE TRIAL COURT ERRED IN DISMISSING MR. EVAN'S POST-CONVICTION PETITION, BECAUSE HIS MURDER CONVICTION IS VOID, AS IT VIOLATES THE FIFTH, SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.
Within this assignment of error, petitioner contends that each of the eight causes of action which he alleged in his petition assert constitutional violations which rendered his conviction void.
The purpose of post-conviction relief is to provide a mechanism for a collateral attack upon convictions which the petitioner claims are void or voidable under the United States or the Ohio Constitution. Freeman v. Maxwell (1965), 4 Ohio St.2d 4, 5-6. R.C. 2953.21 provides that any person convicted of a criminal offense and claiming a denial or infringement of constitutional rights may file a petition requesting the sentencing court to vacate or set aside the judgment. See State v. Gover (1995),71 Ohio St.3d 577, 579; State v. Powell (1993), 90 Ohio App.3d 260,264.
A petition for post-conviction relief may be dismissed without a hearing when the petitioner fails to submit with his petition evidentiary material setting forth sufficient operative facts to demonstrate substantive grounds for relief. State v. Jackson
(1980), 64 Ohio St.2d 107, 111. The test to be applied is "whether there are substantive grounds for relief that would warrant a hearing based upon the petition, the supporting affidavits and the files and records in the case." State v. Strutton (1988),62 Ohio App.3d 248, 251. A petitioner satisfies his initial burden by submitting evidence outside the record sufficient to avoid dismissal. See State v. Williams (1991),74 Ohio App.3d 686, 692.
Under the doctrine of res judicata, a final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating in any proceeding except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial, which resulted in that judgment of conviction, or on an appeal from that judgment. State v. Perry (1967), 10 Ohio St.2d 175, paragraph nine of the syllabus; see, also, State v. Cole
(1982), 2 Ohio St.3d 112, 113.
Applying the foregoing, we note that petitioner asserted in his first and sixth claims for relief that the General Division of the Court of Common Pleas lacked subject matter jurisdiction over the indictments issued against him because he was improperly bound over. Petitioner states that he has a low intelligence quotient, that three of the doctors appointed by the juvenile court did not render a conclusion as to his amenability to rehabilitation, and that one of the court-appointed doctors concluded that he was in fact amenable to rehabilitation.
Absent a proper bindover procedure pursuant to R.C. 2151.26, the juvenile court has the exclusive subject matter jurisdiction over any case concerning a child who is alleged to be a delinquent.State v. Wilson (1995), 73 Ohio St.3d 40, paragraph one of the syllabus.
In 1975, Juv.R. 30 required that before a complaint against a juvenile could be transferred to the general division, it. had to be shown that, inter alia, the juvenile was not amenable to rehabilitation in a facility designed for delinquent children and that the safety of the community required restraint of the child for a period extending beyond his majority.
As to petitioner's claim of retardation, the Supreme Court inState v. Golphin (1996), 81 Ohio St.3d 543, 549 (Resnick, J, concurring and dissenting) stated:
 A mental examination is an indispensable component underlying a bindover decision and clearly serves an important purpose — it aids in evaluating a juvenile's amenability to treatment within the juvenile justice system. See, generally, State v. Watson (1989), 47 Ohio St.3d 93.
A mental investigation is required, but there is no per se
rule requiring the juvenile to have a particular IQ level in order to be tried as an adult; juveniles with low intelligence levels who otherwise meet the requirements for transfer of jurisdiction may be tried as adults. See State v. Malone (Oct. 24, 1991), Cuyahoga App. No. 59218, unreported; State v. Lowry (March 13, 1998), Hamilton App. No. C-96135, unreported.
Further, as to the evidence submitted to the juvenile court, we note that Exhibit C to the petition, prepared on February 3, 1975, by Dr. Florence K. Matthews describes petitioner as "very streetwise." Dr. Matthews also observed that petitioner had an "incapacity to reflect upon the implications of his behavior with society certainly being the loser." Her report continued:
 [Petitioner] tended to find the helplessness of others in the face of aggression as rather amusing and delighted in being in such a powerful role * * * [There is] little hope for marked change of behavior with any treatment modality known at the present time.
From the foregoing, we do not accept petitioner's claim that the evidence did establish that he was amenable to rehabilitation and that the juvenile court erred in transferring jurisdiction of this matter to the general division. The trial court properly rejected petitioner's first and sixth claims for relief.
For his second claim for relief, petitioner asserts that his guilty plea was involuntary because it was secured on the basis that he would be sentenced to the Reformatory at Mansfield. For his third and eighth claims for relief, he asserts that his guilty plea was not knowing, voluntary and intelligently entered because it was premised upon his understanding that he would be sentenced to the Ohio State Reformatory at Mansfield.
In ruling upon the 1976 petition to vacate, the trial court determined that petitioner's guilty plea had been voluntarily, intelligently, and knowingly entered. This Court affirmed the denial of post-conviction relief. See State v. Evans (Nov. 16, 1978), Cuyahoga App. No. 37719, unreported.
We therefore conclude that the issues of whether petitioner's guilty plea was knowing, voluntary and intelligently entered were previously decided and are now barred by the doctrine of resjudicata. Petitioner's second, third and eighth claims for relief were properly rejected by the trial court.
For his fourth claim for relief, petitioner maintains that he was denied effective assistance of counsel since his trial counsel permitted him to plead guilty in exchange for consideration which could not be provided, i.e., that he would be sentenced to the reformatory.
When the claim of ineffective assistance of trial counsel is raised in a petition for post-conviction relief, the petitioner bears the burden of submitting evidentiary materials which demonstrate the lack of competent counsel and that the defense was prejudiced by counsel's ineffectiveness. State v. Jackson (1980)64 Ohio St.2d 107 syllabus. Absent such a showing, no evidentiary hearing is necessary. State v. Pankey (1981), 68 Ohio St.2d 58,59.
In this instance, for the reasons set forth with regard to petitioner's second, third and eighth claims for relief, we have rejected petitioner's claims that his guilty plea was not knowingly, voluntarily and intelligently entered. Petitioner has therefore failed to demonstrate that his trial counsel made an error in permitting him to plead guilty to the offenses, and the claim of ineffective assistance must therefore fail. Further, petitioner had new counsel on appeal. State v. Cole, supra,
syllabus. Accordingly, the fourth claim for relief was properly rejected by the trial court.
For his fifth cause of action, petitioner asserts that his guilty plea was involuntary because it was the product of his desire to end confinement in isolation.
The transcript, as it pertains to this issue, indicates that at the time of the plea, petitioner was being held in isolation in connection with allegations that he had committed a jailhouse rape. (Tr. 5). Petitioner fully understood that as part of the plea proceedings, the allegations concerning the rape would not be presented to the Grand Jury and he would be taken out of isolation. (Tr. 9). There is nothing in the record to suggest that this rendered the plea to the instant offenses involuntary or that an improper basis for the plea existed. The trial court therefore did not err in rejecting this claim for relief.
In his seventh claim for relief, petitioner asserts that his guilty pleas are void because his limited mental abilities rendered him incapable of forming the intent to commit murder. In this connection, petitioner asserts that the diminished capacity defense was available in 1975.
As explained by the Supreme Court in State v. Jackson (1972),32 Ohio St.2d 203, 206:
 Wertheimer, in the Diminished Capacity Defense To Felony-Murder, 23 Standford L.Rev. 799, 805, states that:
 `* * * The only persons who could successfully raise a reasonable doubt as to their capacity of form, the specific intent essential to the felony charged, must either be so intoxicated as to be mentally unable to intend anything (unconscious), or else afflicted with such a defect of reason as not to know the nature and quality of the illegal act or that it is wrong (insane).'
In this instance, the record of the plea proceedings demonstrates that petitioner's trial attorneys stated on the record at the time of the plea proceedings that they took into consideration petitioner's IQ and his ability to understand and aid and assist counsel. (Tr. 10-11). Petitioner's intelligence was therefore considered. Moreover, there is nothing in the record which indicates that petitioner's intelligence was so low that he was mentally unable to intend anything or that he was so afflicted as to fail to appreciate the nature, quality and/or wrongfulness of his conduct. This claim for relief was properly rejected by the trial court.
The assigned error is without merit and the judgment of the trial court is affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
KENNETH A ROCCO, J., AND ANNE L. KILBANE, J., CONCUR.
 _________________________________ ANN DYKE PRESIDING JUDGE
[1] On April 6, 1987, petitioner was indicted in a separate matter for two counts of aggravated murder. The 1975 murder conviction was alleged as a prior murder specification in the 1987 charges pursuant to R.C. 2929.04(A)(5).