OPINION *Page 2 
{¶ 1} Appellant, Adrian Sims, who was 16 years old when he committed the crimes alleged in the superceding indictment, appeals his conviction and sentence on two counts of aggravated robbery in violation of R.C. 2911.01(A)(1)(C), and two counts of aggravated murder in violation of R.C. 2903.01 (B)(F), with firearms specifications to all counts pursuant to R.C. 2941.145(A). Appellant pleaded guilty to all four counts in the superceding indictment, and was sentenced to thirty-three years to life in prison.
 {¶ 2} Appellant asks this Court to reverse the juvenile court's order transferring jurisdiction to the common pleas court, to vacate his conviction on the two counts of aggravated robbery, or to modify his sentence on the ten-year concurrent prison terms imposed on the aggravated robbery charges to minimum, concurrent prison terms, all in the alternative.
 {¶ 3} As probable cause existed to believe that Appellant committed the crimes alleged in the juvenile complaint, and as the crimes alleged in the superceding indictment were based upon the same delinquent acts under review by the juvenile court, the general division of the common pleas court had jurisdiction over the crimes alleged in the superceding indictment. Further, because former R.C. 2929.14 did not create an absolute right to the shortest possible sentence, Appellant did not have a liberty interest in the continued application of the statute. Accordingly, all three assignments of error are overruled. *Page 3 
 Facts {¶ 4} A complaint was filed in juvenile court on May 22, 2006 charging Appellant with two counts of murder in violation of R.C. 2903.02, with gun specifications pursuant to R.C. 2941.145 and 2151.355. "Murder" is defined in R.C. 2903.02, which reads, in pertinent part, "[n]o person shall purposely cause the death of another[.]" The complaint alleged that Appellant "purposefully cause[d] the deaths" of Troy Barlow and Jamie Helms. R.C. 2901. 22(A) reads, in pertinent part, "[a] person acts purposely when it is his specific intention to cause a certain result."
 {¶ 5} The following facts are taken from the probable cause hearing conducted by the juvenile court. According to Robert Floyd ("Floyd"), who was sixteen years old when he testified at the hearing, Appellant, Devron Pinkard (Floyd's cousin), Helms, and Barlow were at Floyd's mother's house on May 20, 2006, the same day that Helms and Barlow were killed. (9/5/06 Tr., pp. 32-33.) Floyd testified that he overheard Helms talking about selling marijuana, (9/5/06 Tr., pp. 39-40), and Pinkard discussing a plan with Appellant to steal marijuana from Helms, Barlow, and "Jesse." (9/5/06 Tr., pp. 27, 34.) Floyd was upset by the idea that a robbery might occur at his mother's house, and, as a consequence, he insisted that Appellant and Pinkard leave her residence. (9/5/06 Tr., pp. 27, 41.)
 {¶ 6} However, the same group of boys met up some time later at the house of Mary Floyd (Pinkard's mother and Floyd's aunt). Floyd decided to go to his aunt's house to fix a scooter. Appellant and Pinkard arrived at the house about five minutes later. (9/5/06 Tr., p. 35.) While Floyd was fixing the scooter in the front yard, Helms *Page 4 
and Barlow went to the backyard of the vacant house next door with Appellant and Pinkard. (9/5/06 Tr., pp. 28, 36.)
 {¶ 7} Floyd testified that Appellant, Pinkard, Helms, and Barlow were in the backyard for "approximately ten seconds," when Pinkard returned to the front yard. (9/5/06 Tr., p. 29.) On cross-examination, Floyd said the boys were in the backyard for "two or three minutes." (9/5/06 Tr., p. 41.)
 {¶ 8} Floyd testified that, two minutes after Pinkard returned to the front yard, he and Pinkard heard gunshots coming from the backyard. (9/5/06 Tr., pp. 29, 42.) Shortly thereafter, Appellant emerged from the backyard. (9/5/06 Tr., pp. 42, 49.) Floyd testified that he and Pinkard then told Mary Floyd to call an ambulance. (9/5/06 Tr., p. 43.) Helms and Barlow both suffered fatal gunshot wounds.
 {¶ 9} In addition to Floyd's testimony, the juvenile court heard the testimony of Detective Sergeant Rick Spotleson. According to Spotleson, immediately following the shooting, Mary Floyd told him that she heard the gunshots and then saw people run away, but she could not identify the gunman. (9/5/06 Tr., p. 11.) On cross-examination, Spotleson testified that the following day, during an in-depth interview, Mary Floyd told him that she saw Appellant walking down the driveway with a gun after she heard the gunshots. (9/5/06 Tr., p. 22.) Spotleson acknowledged the inconsistency of Mary Floyd's statements to the police. (9/5/06 Tr., p. 23.) Finally, Spotleson testified that Carl Wright (Barlow's uncle) identified Barlow at the scene, and then confronted Floyd's mother exclaiming, "your son killed my nephew." (9/5/06 Tr., p. 11.) *Page 5 
 {¶ 10} The final witness at the hearing was Carl Hammonds (Pinkard's cousin), who was arrested at the scene. Hammonds initially implicated Pinkard, because he believed that Pinkard intended to steal the car that Helms and Barlow were driving. (9/5/06 Tr., pp. 11, 59.) In order to vindicate himself of the crimes, Hammonds arranged to meet with Appellant and Pinkard to determine what actually happened. (9/5/06 Tr., p. 56.) At the meeting, Appellant told Hammonds that he pulled a gun on Helms and Barlow, and one of the boys rushed him. Hammonds further testified that Appellant, "went to get another boy * * * brought him back there, and he shot him too," but Hammonds conceded that Appellant did not provide an explanation regarding the shooting of the second boy. (9/5/06 Tr., p. 57.)
 {¶ 11} Based upon the foregoing testimony, the juvenile court transferred jurisdiction over Appellant to the general division of the common pleas court pursuant to R.C. 2152.12. Pinkard, who was eighteen at the time the crimes were committed, was indicted in the general division of the common pleas court and ultimately pleaded guilty to two counts of aggravated robbery in violation of R.C. 2911.01(A)(1)(C).
 FIRST ASSIGNMENT OF ERROR {¶ 12} "The juvenile court erred when it transferred jurisdiction over this case to the general division of the common pleas court, and thereby deprived Mr. Sims of his right to due process of law.Fourteenth Amendment, United States Constitution; Section 16, Article I, Ohio Constitution. Judgment Entry, Apx. at A-3."
 {¶ 13} Juvenile courts have exclusive initial subject matter jurisdiction over any case involving a person alleged to be delinquent for having committed, when younger *Page 6 
than eighteen years of age, an act which would constitute a felony if committed by an adult. State v. Golphin (1998), 81 Ohio St.3d 543,544-545, 692 N.E.2d 608.
 {¶ 14} However, where a complaint has been filed charging a child with murder, and the child was sixteen or seventeen years of age at the time of the act charged, the juvenile court must transfer jurisdiction if there is probable cause to believe that the child committed the charged act. R.C. 2152.12(A)(1)(a). The juvenile court must comply with the bindover provisions in R.C. 2152.12 before a juvenile may be tried as an adult in the general division of the common pleas court.
 {¶ 15} Appellant contends that the juvenile court relied on inadmissible hearsay testimony in order to support its finding of probable cause. Appellant argues that without the hearsay testimony provided by Spotleson, the remaining witnesses were all either biased or implicated in the crime. Appellant claims that the state did not provide any evidence to establish the requisite mental state to commit murder.
 {¶ 16} At a hearing conducted pursuant to R.C. 2152.12, "the state must provide credible evidence of every element of an offense to support a finding that probable cause exists to believe that the juvenile committed the offense before ordering mandatory waiver of juvenile court jurisdiction pursuant to R.C. 2151.26(B) [now renumbered as R.C. 2152.12(A)]." State v. lacona (2001), 93 Ohio St.3d 83, 93,752 N.E.2d 937. To meet this standard, the state must produce evidence that raises more than a mere suspicion of guilt, but need not provide evidence proving guilt beyond a reasonable doubt. Id. The state's evidence must be credible, but need not be unassailable. "Determination of the merits of the competing prosecution *Page 7 
and defense theories, both of which [are] credible, ultimately [is] a matter for a factfinder at trial." Id., at 96.
 {¶ 17} The juvenile court's probable cause determination in a mandatory bindover proceeding involves questions of both fact and law.In re A.J.S., Slip Opinion No. 2008-Ohio-5307, ¶ 51. As a consequence, a reviewing court must defer to the trial court's determinations regarding witness credibility, but review de novo the trial court's legal conclusion regarding probable cause. Id.
 {¶ 18} Disregarding the alleged hearsay testimony provided by Spotleson, independent evidence exists to establish probable cause to believe that Appellant committed the crimes charged in the juvenile complaint. The testimony of Floyd and Hammonds is consistent. Both testified that Appellant shot Helms and Barlow, and that Appellant and Pinkard planned to rob Helms and Barlow, albeit of different property. With respect to intent, Hammonds testified that one of the boys "rushed" Appellant, and that Appellant "went to get another boy * * * brought him back there, and he shot him too." (9/5/06 Tr., p. 57.)
 {¶ 19} Admittedly, Floyd and Hammonds are Pinkard's cousins, and both were initially implicated in the crime. However, their willingness to incriminate Pinkard in the robbery cuts against Appellant's argument that they sought to shield their cousin from liability for the criminal acts he committed.
 {¶ 20} The record reflects that the state "provide[d] credible evidence of every element of [the] offense to support a finding that probable cause exists to believe that *Page 8 
the juvenile committed the offense[s]" charged in the complaint. SeeState v. lacona, supra, at 93. Therefore, Appellant's first assignment of error is overruled.
 SECOND ASSIGNMENT OF ERROR {¶ 21} "The trial court exceeded its jurisdiction by accepting pleas to charges for which Mr. Sims had not been bound over, in contravention of Mr. Sims' right to due process of law. Fourteenth Amendment, United States Constitution; Section 16, Article I, Ohio Constitution. Judgment Entry, Apx. at A-3; Judgment Entry of Sentencing, Apx. at A-1."
 {¶ 22} Appellant was bound over on two murder charges, however, he was indicted in the general division of the common pleas court on two counts of aggravated murder in violation of R.C. 2903.01(B)(F), and two counts of aggravated robbery in violation of R.C. 2911.01(A)(1)(C), with firearms specifications to all counts pursuant to R.C. 2941.145(A). Appellant contends that the aggravated robbery charges should be dismissed because they were not derived from the charged act that was the basis of the transfer from the juvenile court.
 {¶ 23} In State v. Fryerson (Feb. 10, 2000), 8th Dist. No. 71683, the defendant was charged with unrelated offenses against two separate victims, Jones and Robinson. At the close of the probable cause hearing, the juvenile court ordered the mandatory bindover on the charges of kidnapping and aggravated robbery, but only as to Robinson. In the general division of the common pleas court, the defendant was indicted for crimes against both victims in one case and crimes against Jones in a second case, but the first case was voluntarily dismissed by the prosecution. *Page 9 
Ultimately, the defendant was found guilty of aggravated robbery and grand theft auto based upon crimes committed against Jones.
 {¶ 24} The Eighth District held that as long as the indicted offense arose out of the charge that formed the basis of the transfer, the juvenile could be indicted on a different offense. However, where the juvenile was indicted on crimes that did not arise out of the bound over offenses, the trial court lacked jurisdiction. Id. at *5. As a consequence, the Eighth District concluded that, because there was no valid transfer of the charged act relating to Jones from the juvenile court, the general division of the common pleas court lacked jurisdiction to adjudicate those criminal charges, and, therefore, the prosecution was void ab initio. Id. at *6.
 {¶ 25} In State v. Bruno (Feb. 8, 2001), 8th Dist. No. CR-375467A, the Eighth District, citing R.C. 2151.23(H) and its decision inFryerson, concluded that an indictment on aggravated murder was derived from the charged act of murder which was the basis of the transfer. Therefore, the common pleas court did not exceed its jurisdiction. Id. at *3.
 {¶ 26} Here, as in Bruno, Appellant was charged with murder in the juvenile complaint, then indicted on aggravated murder in the general division of the common pleas court. Appellant does not contend that the aggravated murder charges are not "derived from [the] charged act" of murder. Fryerson, supra, at *5. Instead, Appellant maintains that there was no valid transfer of the aggravated robbery charges from the juvenile court, and, therefore, those charges were void ab initio. *Page 10 
 {¶ 27} We addressed a similar challenge in State v. Barnette, 7th Dist. No. 02CA65, 2004-Ohio-7211. In Barnette, a complaint was filed against the defendant alleging attempted murder, aggravated burglary, aggravated robbery, kidnapping, felonious assault, and receiving stolen property. Id., at ¶ 7. The state filed a motion to transfer the case to the general division of the common pleas court. Id. After a bindover hearing, the juvenile court found probable cause for all the offenses except the kidnapping charges. Despite the exclusion of the kidnapping charge from the juvenile court's transfer order, the general division of the common pleas court indicted the juvenile on kidnapping charges. Id., at ¶ 8.
 {¶ 28} The defendant argued that kidnapping was outside the subject matter jurisdiction of the general division of the common pleas court because it was expressly deleted by the juvenile court in its transfer order. We rejected the argument based upon the plain language of R.C. 2151.26(F), which was re-codified at R.C. 2152.12(I), and reads, in pertinent part:
 {¶ 29} "The transfer abates the jurisdiction of the juvenile court with respect to the delinquent acts alleged in the complaint, and, upon the transfer, all further proceedings pertaining to the act charged shall be discontinued in the juvenile court, and the case then shall be within the jurisdiction of the court to which it is transferred as described in division (H) of section 2151.23 of the Revised Code." (Emphasis added.)
 {¶ 30} We concluded that R.C. 2151.26(F), now R.C. 2152.12(I), transfers subject matter jurisdiction with respect to "delinquent acts," not merely the charges *Page 11 
that were filed in the juvenile court related to those delinquent acts. We wrote, "[t]he charges that were issued by the grand jury were based on the same delinquent acts under review in the juvenile court, the only difference being that the grand jury found that those acts also formed the basis of three counts of kidnapping." Id., at ¶ 38.
 {¶ 31} In the instant case, the aggravated murder charges and the aggravated robbery charges were clearly derived from the same delinquent acts subject to review in the juvenile court and which formed the basis of the transfer. Therefore, the general division of the common pleas court did not exceed its jurisdiction when it convicted and sentenced Appellant on the aggravated robbery charges. Accordingly, Appellant's second assignment of error is overruled.
 THIRD ASSIGNMENT OF ERROR {¶ 32} "The trial court erred by imposing non-minimum and maximum prison terms for two counts of aggravated robbery, in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution. Judgment Entry of Sentencing, Apx. at A-1."
 {¶ 33} Because Appellant was sentenced pursuant to State v.Foster, 109 Ohio St.3d 1, 2006-Ohio-856, that is, without the application of former R.C. 2929.14, he argues that he was deprived of a constitutionally-protected liberty interest because Foster "remove[d] a procedural safeguard[] in a statute." (Appellant's Brf., p. 11.) In other words, Appellant argues that Foster took away the presumption that he should receive the shortest sentence authorized for a particular offense.
 {¶ 34} Former 2929.14 reads, in pertinent part: *Page 12 
 {¶ 35} "(B) Except as provided in division (C), (D)(1), (D)(2), (D)(3), (D)(5), (D)(6), (G), or (L) of this section, in section 2907.02
or 2907.05 of the Revised Code, or in Chapter 2925. of the Revised Code, if the court imposing a sentence upon an offender for a felony elects or is required to impose a prison term on the offender, the court shall impose the shortest prison term authorized for the offense pursuant to division (A) of this section, unless one or more of the following applies:
 {¶ 36} "(1) The offender was serving a prison term at the time of the offense, or the offender previously had served a prison term.
 {¶ 37} "(2) The court finds on the record that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others."
 {¶ 38} Appellant cites Hicks v. Oklahoma (1980), 447 U.S. 343, 100 S.Ct. 2227, 65 L. Ed.2d 175, for the proposition that he had a liberty interest in the sentencing scheme set forth in R.C. 2929.14(B), (C), and (E), 2929.19(B)(2), 2929.41(A), and the appellate scheme set forth in R.C. 2953.08. Appellant argues that the state cannot eliminate the rights provided by those statutes without violating the Due Process Clause of the United States Constitution.
 {¶ 39} In Hicks, the defendant was sentenced to 40 years of imprisonment by a jury in accordance with Oklahoma's habitual offender statute. Following the imposition of his sentence, Oklahoma's habitual offender statute was declared unconstitutional. However, the court of appeals affirmed Hicks' sentence, reasoning *Page 13 
that he was not prejudiced by the application of the unconstitutional statute because his sentence was within the range of punishment for his crime.
 {¶ 40} The United States Supreme Court vacated Hicks' sentence based upon an Oklahoma law that entitles a defendant to have his sentence imposed by a jury:
 {¶ 41} "Where, however, a State has provided for the imposition of criminal punishment in the discretion of the trial jury, it is not correct to say that the defendant's interest in the exercise of that discretion is merely a matter of state procedural law. The defendant in such a case has a substantial and legitimate expectation that he will be deprived of his liberty only to the extent determined by the jury in the exercise of its statutory discretion, and that liberty interest is one that the Fourteenth Amendment preserves against arbitrary deprivation by the State." (Citations omitted.) Id., at 346.
 {¶ 42} The above-captioned case is clearly distinguishable fromHicks. The statutory right in Hicks was an absolute right, not subject to the exercise of any discretion on the part of the sentencing entity. Former R.C. 2929.14(B)(2) merely creates a presumption in favor of the shortest sentence, which may be overcome if, "[t]he court finds on the record that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others." Insofar as the unconstitutional statute at issue in this case conferred a presumption rather than an absolute right, Appellant did not have a vested liberty interest in the application of the statute. State v. Yopp, *Page 14 
11th Dist. No. 2006-A-0042, 2007-Ohio-3848. Therefore, Appellant's third assignment of error is overruled.
 {¶ 43} In summary, the juvenile court's judgment entry transferring this case to the general division of the common pleas court was supported by probable cause to believe that Appellant committed the acts charge in the complaint. Moreover, the aggravated robbery charges in the superceding indictment were, "based on the same delinquent acts under review in the juvenile court," Bamette, supra, at ¶ 38, and, as a consequence, the general division of the common pleas court had jurisdiction over those charges. Finally, former R.C. 2929.14(B)(2) merely created a presumption in favor of the shortest sentence, not an absolute right to the shortest sentence. Therefore, Appellant did not have a liberty interest in the application of former R.C. 2929.14(B)(2). Accordingly, Appellant's assignments of error are overruled and the judgment of the trial court is affirmed in full.
Donofrio, J., concurs.
 DeGenaro, P.J., concurs. *Page 1