[Cite as *State v. Brown*, 2018-Ohio-4185.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | No. 17AP-695 |
| | | (C.P.C. No. 17CR-1122) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| DaeQuan M. Brown, | : | |
| Defendant-Appellant. | : | |

---

D E C I S I O N

Rendered on October 16, 2018

---

**On brief**: *Ron O'Brien*, Prosecuting Attorney, and *Seth L. Gilbert*, for appellee. **Argued**: *Seth L. Gilbert*.

**On brief**: *Timothy Young*, Ohio Public Defender, and *Victoria Bader*, for appellant. **Argued**: *Victoria Bader*.

---

APPEAL from the Franklin County Court of Common Pleas

BROWN, P.J.

{¶ 1} Defendant-appellant, DaeQuan M. Brown, appeals from a judgment of the Franklin County Court of Common Pleas accepting his guilty plea and finding him guilty of one count of felonious assault, one count of felonious assault with a firearm specification, and one count of harassment with a bodily substance. For the reasons that follow, we affirm.

{¶ 2} On October 15, 2016, in case No. 16JU-12291, a complaint was filed in the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, alleging Brown was delinquent for committing two offenses of felonious assault, in violation of R.C. 2903.11(A)(2), felonies of the second degree if committed by an adult. The charges included specifications for discharging a firearm from a motor vehicle.

{¶ 3} The facts recited by the prosecutor at a February 15, 2017 hearing indicated the events giving rise to the complaint occurred at Linden McKinley High School in

Columbus, Ohio, on October 13, 2016. The incident was "essentially a drive-by shooting when school let out" where two students were shot and injured. (Feb. 15, 2017 Tr. at 10.) Police investigated the incident, and witnesses identified Brown as the shooter. Brown was 16-years old at the time of the offense and on probation for two prior felony adjudications. Attorney Lindsay Broderick was appointed to represent Brown. Plaintiff-appellee, the State of Ohio, filed a motion, pursuant to R.C. 2152.12(B), asking the juvenile court to relinquish jurisdiction and transfer the case to the general division of the Franklin County Court of Common Pleas.

{¶ 4} On January 13, 2017, in case No. 17JU-557, a complaint was filed in the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, alleging Brown was delinquent for committing the offense of harassment with a bodily substance, in violation of R.C. 2921.38(A), a felony of the fifth degree if committed by an adult. The complaint stated that, while confined in a juvenile detention facility, Brown threw urine on a juvenile detention officer when the officer attempted to collect his hygiene kit. The state filed a R.C. 2152.12(B) motion asking the juvenile court to relinquish jurisdiction over case No. 17JU-557 as well.

{¶ 5} A juvenile court judge conducted a hearing on January 24, 2017, at which Brown was represented by counsel and Brown's mother was present. Brown's counsel informed the court that, although the parties had reached a plea bargain which included a jointly recommended sentence of eight years in adult court, Brown's mother was opposed to the plea bargain. Brown's mother stated that "8 years for him is just too long for a child to go to prison," and informed the court that she was considering retaining an attorney to represent Brown. (Jan. 24, 2017 Tr. at 3.) The court informed Brown's mother of the maximum amount of prison time Brown was facing on the charges, and noted that "[t]he other thing * * * that could be added to the indictment would be participation in a criminal gang." (Jan. 24, 2017 Tr. at 4-5.) The court continued the case.

{¶ 6} On February 8, 2017, the juvenile court held another hearing at which Brown was represented by counsel, and Brown's mother and father were present. Brown's father expressed to the court his dissatisfaction with Brown's appointed counsel, asserting that Broderick had "walked away from" him when he attempted to discuss the case with her. (Feb. 8, 2017 Tr. at 3.) The court explained that "Ms. Broderick [was] [Brown]'s attorney," and that, in order to discuss the case with either parent, Broderick would need a signed

release from Brown "saying that she can discuss this case with you." (Feb. 8 2017 Tr. at 3, 4.) The court further explained to Brown's father Brown had previously indicated he wanted to "take the plea to the eight years understanding that he's got a potential of almost forty years hanging over his head." (Feb. 8, 2017 Tr. at 8.) Brown's father admitted that the maximum prison time on the charges was "steep," but asserted he "believe[d] in [his] son's innocence" and he was uncertain whether Brown's appointed attorney was going to "try to defend that innocence." (Feb. 8, 2017 Tr. at 7.) The court continued the case.

{¶ 7} The juvenile court held the final hearing on the cases on February 15, 2017. Brown was represented by counsel and Brown's mother was present at the hearing. Initially, Attorney Eric Henry addressed the court, explaining that Brown's family attempted to hire him to represent Brown, but Brown had "indicated that he wishe[d] to remain with Ms. Broderick as his attorney." (Feb. 15, 2017 Tr. at 2.) Brown affirmed he wanted to continue with Broderick as his attorney.

{¶ 8} The prosecutor informed the court the parties had reached a resolution on the cases through which Brown would stipulate to probable cause, stipulate he was not amenable to the juvenile justice system, and plead guilty to the charges once the case was transferred to adult court. The parties would then make a "joint recommendation for an 8-year prison sentence." (Feb. 15, 2017 Tr. at 5.) The prosecutor additionally noted that although there was "reference to a possible other offense in the felony packet," the state agreed "not to pursue any charges out of that incident as part of this plea." (Feb. 15, 2017 Tr. at 5.) Broderick confirmed the prosecutor had adequately set forth the parties' plea agreement.

{¶ 9} Following a colloquy with Brown, the juvenile court accepted Brown's stipulation to probable cause and found Brown had "waive[d] his right to an amenability hearing." (Feb. 21, 2017 Jgmt. Entry.) The court granted the state's motions to relinquish jurisdiction in case Nos. 16JU-12291 and 17JU-557, and ordered the cases be transferred to the general division of the common pleas court for prosecution of Brown as an adult.

{¶ 10} On February 28, 2017, Brown was indicted in the general division of the Franklin County Court of Common Pleas on two counts of felonious assault, both with firearm specifications, and one count of harassment with a bodily substance. The court ordered a nolle prosequi be entered to the firearm specification related to the felonious assault charge in Count 2 of the indictment. On August 30, 2017, Brown pled guilty to the

charges. The court issued a judgment entry convicting Brown and sentencing him to 5 years on the felonious assault charge in Count 1, to be served consecutively to the 3-year firearm specification on that count, 5 years on Count 2, and 12 months on Count 3, with Counts 2 and 3 being served concurrently with Count 1, for a total sentence of 8 years imprisonment.

{¶ 11} Brown appeals, assigning the following errors for our review:

> [I.] The Franklin County Juvenile Court erred when it transferred DaeQuan Brown's case to criminal court because it did so without obtaining a knowing, intelligent, and voluntary waiver of DaeQuan's right to an amenability determination. *State v. D.W.*, 133 Ohio St.3d 434, 2012-Ohio-4544, 978 N.E.2d 894; Fourteenth Amendment to the U.S. Constitution; Article I, Section 16 of the Ohio Constitution.
>
> [II.] The juvenile court abused its discretion when it failed to appoint a guardian ad litem for DaeQuan Brown, in violation of Juv.R. 4(B)(2) and R.C. 2152.281(A)(2).
>
> [III.] DaeQuan Brown was denied the effective assistance of counsel, in violation of the Sixth and Fourteenth Amendments to the U.S. Constitution; and, Article I, Section 10, Ohio Constitution.

{¶ 12} Brown's first assignment of error asserts the juvenile court erred when it transferred Brown's case to the general division of the common pleas court because it did so without obtaining a knowing, intelligent, and voluntary waiver of Brown's right to an amenability determination.

{¶ 13} Brown's counsel in juvenile court did not object to the juvenile court's acceptance of Brown's amenability waiver. As such, we review for plain error. *State v. Morgan*, 153 Ohio St.3d 196, 2017-Ohio-7565, ¶ 54 (holding that "criminal plain-error review applies to unpreserved errors that occur in a juvenile-delinquency proceeding").

{¶ 14} "Notice of plain error * * * is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus. "For a court to notice plain error, the error must be an obvious defect in a trial's proceedings, it must have affected substantial rights, and it must have affected the outcome of the trial." *State v. Steele*, 138 Ohio St.3d 1, 2013-Ohio-2470, ¶ 30, citing *State v. Eafford*, 132 Ohio St.3d 159, 2012-Ohio-2224, ¶ 11. Even if an error satisfies these three requirements, "Crim.R. 52(B) states only

that a reviewing court 'may' notice plain forfeited errors; a court is not obliged to correct them." *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002).

{¶ 15} "The juvenile court has exclusive original jurisdiction to hear complaints alleging that a juvenile is a delinquent child by reason of having committed an offense that would be a crime if committed by an adult." *State v. Brown*, 10th Dist. No. 13AP-349, 2014-Ohio-314, ¶ 14. "A juvenile offender may not be tried as an adult unless the juvenile court transfers jurisdiction of the matter to an adult court." *State v. Hicks*, 10th Dist. No. 13AP-429, 2014-Ohio-1444, ¶ 8, citing *State v. Golphin*, 81 Ohio St.3d 543, 545 (1998). Absent a proper "bind-over proceeding in the juvenile court, the common pleas court lacks subject-matter jurisdiction over the case and any conviction obtained there is void ab initio." *Id.*, citing *State v. Wilson*, 73 Ohio St.3d 40, 44 (1995).

{¶ 16} Two types of transfer exist under Ohio's juvenile justice system: discretionary and mandatory. *State v. Hanning*, 89 Ohio St.3d 86, 90 (2000). In instances of discretionary bindover, as in the present case, the juvenile court may transfer the case if the court finds that: (1) the child was 14 years of age or older at the time of the act charged, (2) there is probable cause to believe the child committed the act charged, and (3) the child is not amenable to care or rehabilitation within the juvenile system and the safety of the community may require the child be subject to adult sanctions. R.C. 2152.12(B).

{¶ 17} In making its determination, the juvenile court is required to consider whether the factors in favor of transferring jurisdiction, contained in R.C. 2152.12(D), outweigh the factors against transferring jurisdiction, contained in R.C. 2152.12(E). R.C. 2152.12(B)(3). Additionally, R.C. 2152.12(C) provides that, before considering a discretionary bindover of a juvenile, the court shall order an investigation "into the child's social history, education, family situation, and any other factor bearing on whether the child is amenable to juvenile rehabilitation, including a mental examination of the child." The juvenile "may waive" the R.C. 2152.12(C) examination, so long as the waiver is "competently and intelligently" made. R.C. 2152.12(C). The juvenile court possesses wide latitude to retain or relinquish jurisdiction, and the ultimate decision rests within the juvenile court's sound discretion. *State v. Watson*, 47 Ohio St.3d 93, 95 (1989); *In re A.J.S.*, 120 Ohio St.3d 185, 2008-Ohio-5307, ¶ 39.

{¶ 18} The amenability hearing is a "critical stage of the juvenile proceedings," as it determines whether "the juvenile faces a delinquency adjudication, or adult criminal

sanctions and the label 'felon.' " *State v. D.W.*, 133 Ohio St.3d 434, 2012-Ohio-4544, ¶ 12, citing *Kent v. United States*, 383 U.S. 541, 560 (1966). The juvenile court must hold "an amenability hearing before determining whether to transfer a juvenile from the juvenile court system to the adult criminal system." *Id.* at ¶ 21; Juv.R. 30(C).

{¶ 19} However, a juvenile may waive the amenability hearing, provided: "(1) the juvenile, through counsel, expressly states on the record a waiver of the amenability hearing and (2) the juvenile court engages in a colloquy on the record with the juvenile to determine that the waiver was made knowingly, voluntarily, and intelligently." *Id.* at syllabus. *See also* Juv.R. 3(E) (providing that "[o]ther rights of a child may be waived with permission of the court"). This "two-step process" effectively "balances the parens patriae duty of the juvenile court with the juvenile's due process rights." *Id.* at ¶ 42.

{¶ 20} The juvenile court in *D.W.* concluded that no amenability hearing was necessary, as the court had previously bound the same juvenile over to adult court in a prior case. *Id.* at ¶ 3. The Supreme Court of Ohio held that "a juvenile court cannot bind over a juvenile on the sole basis that the juvenile has been previously bound over." *Id.* at ¶ 46.

{¶ 21} The court likened a juvenile's waiver of their right to an amenability hearing to the waiver of counsel. *Id.* at ¶ 28. In *In re C.S.*, 115 Ohio St.3d 267, 2007-Ohio-4919, the court held that an effective "waiver of the right to counsel by a juvenile must be voluntary, knowing, and intelligent," and the juvenile court judge should "engage in a meaningful dialogue with the juvenile" instead of "relying solely on a prescribed formula or script for engaging a juvenile during the consideration of the waiver" of counsel. *Id.* at ¶ 106-07. *See also* Juv.R. 3(D)[1] (incorporating the holding of *C.S.* and setting forth the requirements for a juvenile's waiver of counsel). The *D.W.* court noted that "the holding in *In re C.S.* and the language of Juv.R. 3 are persuasive and applicable to the standard" for waiving the amenability hearing. *D.W.* at ¶ 32.

---

[1] Any waiver of the right to counsel shall be made in open court, recorded, and in writing. In determining whether a child has knowingly, intelligently, and voluntarily waived the right to counsel, the court shall look to the totality of the circumstances including, but not limited to: the child's age, intelligence, education, background and experience generally and in the court system specifically, the child's emotional stability, and the complexity of the proceedings. The court shall ensure that a child consults with a parent, custodian, guardian, or guardian ad litem, before any waiver of counsel. However, no parent, guardian, custodian, or other person may waive the child's right to counsel. Juv.R. 3(D).

{¶ 22} The February 15, 2017 hearing transcript demonstrates Brown made a knowing, voluntary, and intelligent waiver of his right to an amenability hearing. After Brown's counsel affirmed that Brown wanted to stipulate to probable cause and to the lack of amenability, the court personally addressed Brown. Brown stated his name, date of birth, and the last grade he had completed in school. Brown affirmed that he could read and write the English language, and that he was not under the influence of any substance that would affect his ability to understand what was happening at the hearing. The following exchange then occurred:

> JUDGE JAMISON: You understand that you are not having a trial today?
>
> DAEQUAN BROWN: Yes.
>
> JUDGE JAMISON: You understand that if you admit to these charges and the stipulations that your case will be transferred to the adult system -- the General Division for prosecution?
>
> DAEQUAN BROWN: Yes, ma'am.
>
> JUDGE JAMISON: Have you had ample time to discuss this case with Ms. Broderick?
>
> DAEQUAN BROWN: Yes.
>
> JUDGE JAMISON: Do you believe that the legal advice that she has given you is in your best interest to follow?
>
> DAEQUAN BROWN: Yes, ma'am.
>
> JUDGE JAMISON: Okay. You understand that the State has offered, in exchange of this admission, to a sentence of 8 years in a Ohio Department of Rehabilitation and Correction Institution?
>
> DAEQUAN BROWN: Yes, ma'am.
>
> JUDGE JAMISON: That you will not be held in the juvenile system?
>
> DAEQUAN BROWN: Yes, ma'am.
>
> JUDGE JAMISON: Okay. You understand that by stipulating to probable cause that you are waiving your right to have this

> Court have a hearing on that matter and make a decision that your case should be transferred?
>
> DAEQUAN BROWN: Yes.
>
> JUDGE JAMISON: And you're also stipulating that the victims did suffer bodily harm and you were already on probation for another felony offense and that you are not what we call amenable or should not be kept in the juvenile system; you understand that you are stipulating or admitting to those things?
>
> DAEQUAN BROWN: Yes, ma'am.

(Feb. 15 2017 Tr. at 6-8.)

{¶ 23} The court asked Brown if anyone had "attempted in any way to force [him] to change [his] mind in this matter." (Feb. 15, 2017 Tr. at 8.) Brown stated his mother and father had both advised him not to take the plea deal, but he wanted to take the plea deal. The court assured that Brown understood the maximum possible penalties he was facing on the charges. Brown affirmed he was making these decisions "voluntarily * * * and of [his] own freewill." (Feb. 15, 2017 Tr. at 9.) The court again asked Brown if he was "satisfied with [his] attorney," and Brown responded "Yes, ma'am." (Feb. 15, 2017 Tr. at 10.)

{¶ 24} Brown acknowledges that he "expressed his intent to waive his right to an amenability hearing on the record and through counsel," but argues his waiver was deficient because the juvenile court "failed to fully apprise [him] of the nature of the hearing, rights he had, and the consequences of waiving those rights before accepting his stipulation." (Appellant's Brief at 12.) Specifically, Brown argues that because the juvenile court failed to explain "what amenability meant," failed to explain the R.C. 2152.12(C) requirements, and failed to explain the R.C. 2152.12(D) and (E) factors, his waiver of the amenability hearing was not knowingly, voluntarily, or intelligently made. (Appellant's Brief at 13.)

{¶ 25} The juvenile court was not obligated to define amenability or to explain the components of R.C. 2152.12(C), (D), and (E) to Brown before accepting his waiver of the amenability hearing. Notably, there is nothing in *D.W.* which states that a meaningful dialogue with the juvenile must include explanation of R.C. 2152.12(C), (D), and (E).

{¶ 26} In *State v. J.T.S.*, 10th Dist. No. 14AP-516, 2015-Ohio-1103, the appellant argued the juvenile court "was obligated to provide appellant with a legal definition of probable cause before accepting his stipulation" to probable cause. *Id.* at ¶ 30. This court disagreed, observing there was "no need to impose such an obligation upon the juvenile court." *Id.* at ¶ 31. Rather, it was "reasonable for the juvenile court to rely on appellant's representation in open court that he had the opportunity to discuss the proceedings with his legal counsel and that he understood the right he was waiving by entering into a stipulation." *Id. Compare id.* at fn. 3, citing *State v. Jells*, 53 Ohio St.3d 22 (1990), paragraph one of the syllabus; *State v. Bays*, 87 Ohio St.3d 15, 20 (1999) (holding that a "trial court is not required to inform the defendant of all the possible implications of waiver," and that a defendant "need not have a complete or technical understanding of the jury trial right in order to knowingly and intelligently waive it").

{¶ 27} The juvenile court herein was entitled to rely on Brown's statement that he had ample time to discuss the case with his attorney and he was satisfied with the advice she had provided him. The court personally addressed Brown, and Brown unequivocally stipulated that he was not amenable to rehabilitation in the juvenile justice system. Brown understood that, as a result of his stipulations, his case would be removed from juvenile court and transferred to adult court for prosecution. The juvenile court's colloquy demonstrates compliance with the Juv.R. 3(D) requirements for securing a knowing, voluntary, and intelligent waiver, as the court considered Brown's age, education, prior experiences in the court system, the nature of the proceedings, and ensured that Brown had consulted with his parents. *See* Juv.R. 3(D); *D.W.* at ¶ 32.

{¶ 28} Accordingly, the record demonstrates the juvenile court engaged in a colloquy on the record with Brown to determine that Brown made a knowing, intelligent, and voluntary waiver of his right to an amenability hearing. As Brown also expressed his intent to waive the amenability hearing on the record and through counsel, both of the *D.W.* requirements are satisfied in the present case.

{¶ 29} Furthermore, Brown fails to establish any prejudice resulting from the juvenile court's acceptance of his waiver. Brown states that "[h]ad the court held a full amenability hearing, it is possible that he would have been found to be amenable and the court could have retained jurisdiction." (Appellant's Brief at 15.) However, in *Morgan* the court "decline[d] to recognize a 'presumed prejudicial' plain-error standard." *Id.* at ¶ 50. To

constitute plain error in juvenile court proceedings, the juvenile must "prove that the error affected the outcome of the proceeding, that is, that he would not have been bound over to the adult court." *Id.* at ¶ 51. "[S]peculation cannot prove prejudice." *Morgan* at ¶ 53. Accordingly, Brown's contention that it was possible the court could have retained jurisdiction is insufficient to demonstrate plain error.

{¶ 30} Several of the R.C. 2152.12(D) factors in favor of transfer were present in the case including Brown caused physical harm to the victims, there were indications that the shooting was gang related, Brown used a firearm to commit the offense, and Brown was on probation for two prior felony adjudications at the time of the new offenses. *See* R.C. 2152.12(D)(1), (4), (5), and (6). Additionally, Brown had not done well on probation, as he failed to show up to a meeting with his probation officer and "tested positive for marijuana, morphine, and opiates" while "on ankle monitor." (Oct. 19, 2016 Tr. at 4.) *See* R.C. 2152.12(D)(7). In contrast, few if any of the R.C. 2152.12(E) factors against transfer were applicable in the present case. *See* R.C. 2152.12(E). Accordingly, Brown fails to demonstrate plain error.

{¶ 31} Based on the foregoing, appellant's first assignment of error is overruled.

{¶ 32} Brown's second assignment of error asserts the juvenile court abused its discretion by failing to appoint a guardian ad litem ("GAL"), in violation of Juv.R. 4(B)(2) and R.C. 2152.281(A)(2).

{¶ 33} A GAL is a "person appointed to protect the interests of a party in a juvenile court proceeding." Juv.R. 2(O). A GAL provides the juvenile court with a recommendation regarding the child's best interests. Sup.R. 48(D)(1).

{¶ 34} R.C. 2151.281(A)(2) provides that the juvenile court shall appoint a GAL to protect the interests of a child in any proceeding where "[t]he court finds that there is a conflict of interest between the child and the child's parent." Juv.R. 4(B)(2) provides that the juvenile court shall appoint a GAL to protect the interests of a child when "[t]he interests of the child and the interests of the parent may conflict." *See In re Sappington*, 123 Ohio App.3d 448, 453 (2d Dist.1997) (noting that Juv.R. 4(B)(2) "does not require an actual conflict of interest to trigger the need for a guardian ad litem"). "In theory, then," as the parent is the "natural guardian of a child," the parent and the GAL "have the same responsibility." *In re Howard*, 119 Ohio App.3d 201, 206 (1st Dist.1997), syllabus. Thus, the

law only requires "the appointment of a guardian ad litem where the interests of the parent and the child conflict." *Id.*

{¶ 35} As " 'the juvenile court is in the best position to weigh the relevant facts in determining whether a potential conflict of interest exists between the parent and child,' " we review such decisions for an abuse of discretion. *State v. Simmonds*, 10th Dist. No. 14AP-1065, 2015-Ohio-4460, ¶ 10, quoting *Sappington* at 453-54. Specifically, reversible error exists if the record "reveals a strong enough possibility of conflict of interest between parent and child to show that the juvenile court abused its discretion by not so finding." *Sappington* at 454. *See also Howard* at 206 (noting that a conflict exists when the parent "clearly ha[s] her own agenda, or [is] advocating her own best interest"); *Simmonds* at ¶ 13 (finding no conflict of interest as there was "nothing in the record indicating that the mother or the grandmother's interests were no longer consistent with a role that properly protects the child"). As Brown did not object to the failure of the juvenile court to appoint a GAL, the alleged error is subject to the plain error standard of review. *Morgan* at ¶ 55.

{¶ 36} "A 'colorable claim of conflict' frequently arises in a delinquency proceeding when a parent speaks against a child's penal interests." *State v. Legg*, 4th Dist. No. 14CA23, 2016-Ohio-801, ¶ 18, quoting *In re Bostwick*, 4th Dist. No. 05CA2820, 2005-Ohio-5123, ¶ 8. *See In re J.C.*, 5th Dist. No. 14CA23, 2015-Ohio-4664, ¶ 33-34; *In re Slider*, 160 Ohio App.3d 159, 2005-Ohio-1457, ¶ 12 (4th Dist.) However, courts have been "unwilling to adopt a bright-line rule that would require the appointment of a guardian ad litem in every case in which a child's parents or legal guardians speak against the child's interests." *Legg* at ¶ 18, citing *Howard* at 207. Instead, "courts have examined the record to determine whether the parent or legal guardian expressed any interest inconsistent with the child's interests." *Id. See In re D.A.G.*, 4th Dist. No. 13CA3366, 2013-Ohio-3414, ¶ 54; *Howard* at 207.

{¶ 37} The presence of counsel is a factor the court should consider in appointing a GAL. *Simmonds* at ¶ 11. A juvenile court "should be more sensitive to potential conflicts of interest under Juv.R. 4(B)(2) when there is no other person present to protect the rights and interests of the minor." *Sappington* at 455. *See also* Juv.R. 4(C)(1) (providing that, if the appointed GAL is an attorney, "the guardian may also serve as counsel to the ward providing no conflict between the roles exist[s]"). Brown was represented by counsel at every proceeding in juvenile court.

{¶ 38} Brown asserts that an "obvious conflict of interest" existed between Brown and his parents, as Brown's parents "both expressed their opposition to the plea agreement and even retained private counsel to meet with [Brown]." (Appellant's Brief at 20; 19.) We disagree. There is nothing in the record indicating that Brown's parents were advancing their own interests or agenda, or that they were acting in any manner inconsistent with a role which properly protected the child. Brown's parents did not advocate against Brown's penal interest. Rather, Brown's parents expressed their desire for Brown to experience the least amount of punishment possible.

{¶ 39} Brown and his parents simply disagreed regarding how Brown's interest in serving the least amount of prison time should be accomplished. Brown's parents did not want him to take the plea bargain, and attempted to retain private counsel for him in the hopes that the case would either remain in juvenile court or that Brown would be acquitted on the charges if the case were transferred to adult court. Brown, after consulting with his appointed counsel, believed that accepting the plea deal with the eight-year sentencing recommendation was in his best interest. Thus, while Brown and his parents may have disagreed as to the method, their overall interests were aligned. Neither the "statute [n]or the rule requires that every time a parent and child disagree, a guardian ad litem must be appointed." *Howard* at 206.

{¶ 40} Moreover, Brown fails to articulate how the juvenile court's failure to appoint a GAL prejudiced him. Although Brown notes that a GAL "would have provided the court with an unbiased, third party recommendation regarding [Brown's] best interest," there is nothing in the record indicating that a GAL would not have found the plea deal to be in Brown's best interest. (Appellant's Brief at 25.) *Compare In re C.N.*, 3d Dist. No. 6-17-16, 2018-Ohio-2442, ¶ 10. Brown fails to establish that the outcome of the proceeding would have been different if the court had appointed a GAL. Accordingly, Brown fails to demonstrate plain error.

{¶ 41} Based on the foregoing, Brown's second assignment of error is overruled.

{¶ 42} Brown's third assignment of error asserts he was deprived of the effective assistance of counsel in the juvenile court. Brown asserts his counsel was constitutionally ineffective "for failing to object to the juvenile court's failure to engage in a meaningful dialogue with [Brown] prior to accepting his amenability waiver and fail[ing] to appoint a guardian ad litem." (Appellant's Brief at 28.)

{¶ 43} To establish a claim of ineffective assistance of counsel, a defendant must satisfy a two-prong test. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The defendant must show that: (1) defense counsel's performance was so deficient that he was not functioning as the counsel guaranteed under the Sixth Amendment to the United States Constitution, and (2) defense counsel's errors prejudiced defendant. *Id.* To show prejudice, a defendant must establish a reasonable probability that, but for his counsel's errors, the result of the trial would have been different. *Id.* at 694. The failure to make either showing defeats a claim of ineffectiveness of trial counsel. *Id.* at 697.

{¶ 44} In Ohio, a properly licensed attorney is presumed competent. *State v. Monford*, 190 Ohio App.3d 35, 2010-Ohio-4732, ¶ 78 (10th Dist.), citing *Vaughn v. Maxwell*, 2 Ohio St.2d 299, 301 (1965). Matters of trial strategy and even debatable trial tactics do not establish ineffective assistance of counsel. *Id.* at ¶ 79, citing *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, ¶ 101.

{¶ 45} As demonstrated above, the court's colloquy with Brown regarding his amenability waiver was sufficient and there was no conflict of interest between Brown and his parents which necessitated appointment of a GAL. *See State v. Foust*, 105 Ohio St.3d 137, 2004-Ohio-7006, ¶ 120 (holding that, where "counsel had no basis for objecting," counsel could not "be deficient for failing to object"). Moreover, considering the maximum amount of prison time Brown was facing and the likelihood of transfer, Brown's counsel successfully negotiated a highly favorable plea deal for her client. *Compare J.T.S.* at ¶ 52. Brown fails to establish a reasonable probability that he would not have been bound over to adult court if his counsel had objected to either the colloquy or the lack of a GAL. Accordingly, Brown fails to demonstrate he was deprived of the effective assistance of counsel.

{¶ 46} Based on the foregoing, Brown's third assignment of error is overruled.

{¶ 47} Having overruled Brown's three assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

TYACK and BRUNNER, JJ., concur.

————————————