[Cite as *State v. Smith*, 2021-Ohio-2982.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY


| | | |
|---|---|---|
| STATE OF OHIO, | : | CASE NO. CA2020-09-101 |
| Appellee, | : | O P I N I O N<br>8/30/2021 |
| | : | |
| - vs - | : | |
| | : | |
| MICHAEL RODARIOUS SMITH aka<br>MICHAEL SMITH, | : | |
| | : | |
| Appellant. | | |


CRIMINAL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CR2019-08-1344


Michael T. Gmoser, Butler County Prosecuting Attorney, and Michael Greer, Assistant Prosecuting Attorney, for appellee.

Repper-Pagan Law, Ltd., and Christopher J. Pagan, for appellant.


**M. POWELL, P.J.**

{¶ 1} Appellant, Michael Rodarious Smith aka Michael Smith, appeals his conviction and sentence in the Butler County Court of Common Pleas for murder.

{¶ 2} On July 11, 2019, appellant was charged by complaint in the Butler County Court of Common Pleas, Juvenile Division ("juvenile court"), with two counts of murder for the fatal shooting of Shon Walker on June 27, 2019, and one count of tampering with

evidence. Each murder count was accompanied by a firearm specification. Because appellant was charged with murder and was 17 years old at the time of the offenses, he was subject to mandatory bindover to the general division of the common pleas court if there was probable cause to believe he committed the offenses. R.C. 2152.10. Consequently, the state moved to transfer the case to the general division of the common pleas court for criminal prosecution. The juvenile court held a probable cause hearing on August 21, 2019.[1] Appellant's mother was present at the hearing; his father was not.

{¶ 3} Appellant's counsel advised the juvenile court that she had discussed the purpose of a probable cause hearing with appellant and his mother and that appellant had decided to waive his right to the probable cause hearing. Upon being asked to provide a factual statement of the offenses, the prosecutor stated that appellant had shot Shon Walker multiple times with a firearm, ultimately resulting in Walker's death, and that he had subsequently disposed of the firearm and his clothing. The prosecutor further advised the court that the incident was on video and that a witness had identified appellant as the shooter. Following a colloquy with appellant, the juvenile court accepted his waiver and found there was probable cause to believe appellant had committed the offenses charged. The juvenile court then set bond at $1,000,000 for the murder charge, $10,000 for each firearm specification, and $10,000 for the tampering with evidence charge. The case was transferred to the Butler County Court of Common Pleas, General Division ("trial court").

{¶ 4} Appellant was indicted in September 2019 on two counts of murder, each with a firearm specification, and one count of tampering with evidence. On August 17, 2020, pursuant to plea negotiations, appellant pled guilty to one count of murder in violation of

---

1. The hearing held upon a state's request for mandatory bindover of a juvenile has been called a mandatory bindover hearing, a mandatory transfer hearing, a probable cause hearing, and a preliminary hearing. *In re B.W.*, 7th Dist. Mahoning No. 17 MA 0071, 2017-Ohio-9220, ¶ 17; Juv.R. 30(A).

R.C. 2903.02(A) and a one-year firearm specification. The next day, however, appellant moved to withdraw his guilty plea. On September 9, 2020, the trial court denied appellant's motion to withdraw his guilty plea and sentenced him to 15 years to life in prison for murder and to a mandatory, consecutive one year in prison for the firearm specification, for a total, aggregate prison term of 16 years to life. The trial court further imposed mandatory lifetime supervision by the Adult Parole Authority.

{¶ 5} Appellant now appeals, raising three assignments of error.

{¶ 6} Assignment of Error No. 1:

{¶ 7} THE JUVENILE COURT ERRED BY DISREGARDING SMITH'S PROCEDURAL PROTECTIONS AT THE BINDOVER.

{¶ 8} Appellant argues the juvenile court erred in transferring the case to the general division of the common pleas court for criminal prosecution, presenting three issues for review.

{¶ 9} In his first issue for review, appellant argues that the juvenile court violated Juv.R. 3(E) and *State v. D.W.*, 133 Ohio St.3d 434, 2012-Ohio-4544, by allowing appellant to waive his right to a probable cause hearing without a written waiver, a meaningful colloquy, and a record showing that appellant's waiver was knowing, intelligent, and voluntary. Specifically, appellant asserts that his waiver was infirm because the juvenile court's colloquy with appellant did not discuss (1) the structure of the probable cause hearing, (2) the definition of probable cause, (3) appellant's right to present evidence and test and challenge the state's evidence during the probable cause hearing, (4) the state's burden to establish probable cause that appellant did not act in self-defense, (5) and the consequences of the matter remaining in the juvenile court should the court finds there was no probable cause.

{¶ 10} Given his murder charge and age at the time of the offenses, appellant was

- 3 -

subject to mandatory bindover to the general division of the common pleas court if there was probable cause to believe he committed the offenses. The juvenile court conducted a probable cause hearing as required under R.C. 2152.12(A)(1)(a) and Juv.R. 30(A). Juv.R. 3 states that a juvenile may not waive his right to be represented by counsel at a Juv.R. 30 hearing; however, "[o]ther rights of a child may be waived with permission of the court." Juv.R. 3(E).

{¶ 11} "[A] juvenile court at a bindover hearing need not find as a fact that the accused minor is guilty of the offense charged." *State v. Iacona*, 93 Ohio St.3d 83, 93, 2001-Ohio-1292. Rather, the juvenile court need only determine whether there is probable cause to believe the juvenile committed the offenses charged. *Id.* The state "must provide credible evidence of every element of an offense to support a finding that probable cause exists to believe that the juvenile committed the offense before ordering mandatory waiver of juvenile court jurisdiction[.]" *Id.* "In meeting this standard the state must produce evidence that raises more than a mere suspicion of guilt, but need not provide evidence proving guilt beyond a reasonable doubt." *Id.*

{¶ 12} We first address appellant's claim that the state was required to address self-defense at the probable cause hearing.

{¶ 13} "Self-defense is an affirmative defense." *State v. Jacinto*, 8th Dist. Cuyahoga No. 108944, 2020-Ohio-3722, ¶ 43. Prior to March 28, 2019, a defendant had the burden of proving self-defense by a preponderance of the evidence. *Id.* at ¶ 44. However, on March 28, 2019, the self-defense statute was amended to shift the burden of proof to the state as follows: "If, *at the trial* of a person who is accused of an offense that involved the person's use of force against another, there is evidence presented that tends to support that the accused person used the force in self-defense, * * * the prosecution must prove beyond a reasonable doubt that the accused person did not use the force in self-defense[.]"

- 4 -

(Emphasis added.) R.C. 2901.05(B)(1).

{¶ 14} Self-defense is a matter independent of the elements of the crime. *State v. Poole*, 33 Ohio St.2d 18, 19 (1973). "Self-defense seeks to relieve the defendant from culpability rather than to negate an element of the offense charged." *Id.* The Ohio Supreme Court has held that "the state has no burden to disprove alternate theories of the case at a bindover proceeding." *In re A.J.S.*, 120 Ohio St.3d 185, 2008-Ohio-5307, ¶ 61, citing *Iacona*, 93 Ohio St.3d at 96. "Determination of the merits of the competing prosecution and defense theories, both of which [are] credible, ultimately [is] a matter for the factfinder at trial." (Emphasis deleted.) *Iacona* at 96. "[R]esolution of the conflicting theories of the evidence * * * is a matter for the trier of fact at a trial on the merits of the case, not a matter for exercise of judicial discretion at a bindover hearing in the juvenile court." *In re A.J.S.* at ¶ 64.

{¶ 15} Thus, the state was not required to address or disprove self-defense at the probable cause hearing for purposes of establishing probable cause to believe appellant had committed murder.

{¶ 16} We now turn to appellant's waiver of his right to a probable cause hearing. In support of his argument that his waiver was not knowing, intelligent, and voluntary, appellant cites *D.W.*, 2012-Ohio-4544. In that case, the Ohio Supreme Court addressed whether a juvenile may waive the amenability hearing required in discretionary bindover cases and set forth the standard for a valid waiver. The supreme court found that the waiver of an amenability hearing is among those "other rights" that may be waived with permission of the juvenile court pursuant to Juv.R. 3(E). *D.W.* at ¶ 26.

{¶ 17} Regarding the standard to be applied in determining whether the waiver of an amenability hearing is valid, the supreme court held that the juvenile court must "engage in a meaningful dialogue with the juvenile" to "ensure that the juvenile fully understands, and

intentionally and intelligently relinquishes, the right to [an amenability hearing]." *Id.* at ¶ 29. The supreme court then established "a two-step process" a juvenile court must use to determine the validity of the waiver. *Id.* at ¶ 33. "First, before being transferred, the juvenile may waive the right to a * * * hearing only if the waiver is expressly stated on the record and through counsel." *Id.* at ¶ 34. Second,

> the juvenile court must determine that the waiver is offered knowingly, voluntarily, and intelligently. Proper determination must include a colloquy with the juvenile and must occur on the record. The colloquy allows the juvenile court to fulfill its parens patriae duty by ensuring that the juvenile fully understands and intentionally and intelligently relinquishes the right to an amenability hearing. And it allows the judge "to engage in a meaningful dialogue with the juvenile," to guarantee that the juvenile's due process rights are protected.

*Id.* at ¶ 37, quoting *In re C.S.,* 115 Ohio St.3d 267, 2007-Ohio-4919, ¶ 107. We note that the supreme court's two-step process does not require that the waiver be in writing.

{¶ 18} Upon reviewing the juvenile court's colloquy with appellant, we find that appellant's waiver of his right to a probable cause hearing was made knowingly, intelligently, and voluntarily. The first step of the waiver test was plainly met as appellant, through counsel, expressly stated on the record a waiver of the probable cause hearing. *D.W.,* 2012-Ohio-4544 at ¶ 47. Moreover, the juvenile court's dialogue with appellant confirmed that appellant wanted to waive the probable cause hearing and did so in consultation with counsel and his mother.

{¶ 19} The second step of the waiver test was likewise met as the juvenile court engaged in a colloquy on the record with appellant to determine that the waiver was made knowingly, intelligently, and voluntarily. *Id.* Specifically, the juvenile court addressed appellant and asked whether appellant had discussed the waiver of probable cause with his attorney. Appellant responded affirmatively. The juvenile court asked whether appellant understood that were the court to find probable cause, it would send the charges of murder

and tampering with evidence and the accompanying firearm specifications to the "Adult Division" of the common pleas court. Appellant responded affirmatively. The juvenile court asked whether this was what appellant wanted to do. Appellant responded affirmatively. The juvenile court confirmed that no one was forcing appellant into waiving the probable cause hearing. The juvenile court further confirmed that appellant was not under the influence of drugs or alcohol that would prevent him from understanding what was being discussed. The juvenile court once again asked whether appellant had discussed the probable cause hearing with his attorney and whether he was satisfied with counsel's advice. Appellant responded affirmatively. The juvenile court asked whether appellant had any questions. Appellant responded, "No sir." Based upon the state's factual statement of the offenses, the juvenile court found probable cause and ordered the case bound over for criminal prosecution.

{¶ 20} The Tenth District Court of Appeals has held that a juvenile's waiver of the right to a probable cause hearing was knowing, intelligent, and voluntary following mandatory bindover hearing colloquies similar to the colloquy at bar. *See State v. Johnson*, 10th Dist. Franklin No. 12AP-898, 2013-Ohio-2008; *State v. J.T.S.*, 10th Dist. Franklin No. 14AP-516, 2015-Ohio-1103. In *Johnson*, the juvenile court advised the juvenile that the purpose of the probable cause hearing was to determine whether trial would take place in juvenile or adult court, and that the court's acceptance of the juvenile's waiver meant the case would automatically go to adult court. The juvenile court confirmed that the juvenile had discussed the matter with counsel and that he wanted the juvenile court to accept his waiver to a probable cause hearing.

{¶ 21} In *J.T.S.*, the juvenile court advised the juvenile that a stipulation to a finding of probable cause meant that the juvenile was "giving up" the right to have a probable cause hearing during which the state would be required to establish probable cause, and that the

case would transfer to the general division of the common pleas court. The juvenile court confirmed that the juvenile had discussed the matter with counsel, was not under the influence of drugs or medication that would prevent him from understanding what was being discussed, had no further questions, and wanted the juvenile court to accept his stipulation of probable cause.

{¶ 22} As was the case in *J.T.S.* and *Johnson*, the juvenile court, through its colloquy with appellant, sufficiently ensured that appellant's waiver of the right to a probable cause hearing was made knowingly and intelligently and was a voluntary relinquishment of a known right. The juvenile court utilized the proper inquisitional approach. There was no indication during the hearing that appellant had any intellectual or learning deficits that would have prevented his understanding of the court's statements. Upon the court's inquiry, appellant responded unequivocally that he had discussed the waiver of the probable cause hearing with his attorney, that he was satisfied with her advice, and that he had no other questions. The juvenile court was entitled to rely upon appellant's statements he had discussed the matter with counsel and that he was satisfied with the advice she had provided him. *In re J.T.S.*, 2015-Ohio-1103 at ¶ 31; *see also State v. Brown*, 10th Dist. Franklin No. 17AP-695, 2018-Ohio-4185, ¶ 27. Thus, the record clearly indicates that appellant understood he had a right to a probable cause hearing and that he intended to waive that right. We therefore find that both *D.W.* requirements were met.

{¶ 23} Furthermore, appellant fails to establish any prejudice resulting from the juvenile court's acceptance of his waiver to a probable cause hearing. Appellant does not identify any strategic advantage he might have gained by exposing the state's evidence during the probable cause hearing. More significantly, appellant does not claim that probable cause was lacking or that he would not have waived the probable cause hearing had the juvenile court engaged in a more fulsome colloquy. Appellant's waiver of the

probable cause hearing does not mean that the juvenile court would have otherwise retained jurisdiction had the probable cause hearing gone forward.

{¶ 24} Appellant further contends the juvenile court was obligated to provide him with a legal definition of probable cause before accepting his waiver. There is no indication in the record that appellant had an inadequate opportunity to consult with his attorney or that counsel failed to adequately explain the proceedings to appellant. Appellant was present in the courtroom as the prosecutor recited the relevant facts for the court. Once again, it was reasonable for the juvenile court to rely upon appellant's representation in open court that he had the opportunity to discuss the proceedings with his attorney and that he understood the right he was waiving by choosing to waive his right to a probable cause hearing. *In re J.T.S.*, 2015-Ohio-1103 at ¶ 31.

{¶ 25} The same reasoning applies to appellant's contention that the juvenile court was required to fully apprise him of the structure of the probable cause hearing, the rights he had, and the consequences of the matter remaining in the juvenile court should the court find there was no probable cause. The juvenile court was entitled to rely upon appellant's representation that he had an opportunity to discuss the proceedings with his attorney and his negative response to the court's query: "Do you have any questions?" *Id.* at ¶ 32. *See also Brown*, 2018-Ohio-4185.

{¶ 26} In his second issue for review, appellant argues that the written notice of the scheduled probable cause hearing did not comply with R.C. 2152.12(G) and Juv.R. 30(D). Specifically, appellant asserts that the notice was defective because (1) it referenced a hearing to take place on July 26, 2019, when the probable cause hearing was actually held on August 21, 2019; (2) the certificate of service on the notice only listed appellant's counsel; (3) although appellant's mother attended the hearing, the record does not reflect she was served three days in advance as required by R.C. 2152.12(G) and Juv.R. 30(D);

and (4) there is no indication appellant's father was served with the notice and he did not attend the hearing.

{¶ 27} R.C. 2152.12(G) requires a juvenile court to "give notice in writing of the time, place, and purpose of any hearing held pursuant to division (A) or (B) of this section to the child's parents, guardian, or other custodian and to the child's counsel at least three days prior to the hearing." Likewise, Juv.R. 30(D) provides that "[n]otice in writing of the time, place, and purpose of any hearing held pursuant to this rule shall be given to the state, the child's parents, guardian, or other custodian and the child's counsel at least three days prior to the hearing, unless written notice has been waived on the record."

{¶ 28} R.C. 2152.12(G) "reflects a legislative intent to protect juveniles by informing their caregivers of any pending actions involving the juveniles so that the caregivers can offer assistance, guidance, and support to the juveniles." *State v. Reynolds*, 10th Dist. Franklin No. 06AP-915, 2007-Ohio-4178, ¶ 12; *State v. Rodriguez*, 12th Dist. Butler No. CA2008-07-162, 2009-Ohio-4460, ¶ 27.

{¶ 29} As stated above, appellant's mother attended the probable cause hearing on August 21, 2019. At the beginning of the hearing, appellant's mother confirmed she had received a copy of the state's bindover motion; appellant's counsel advised the juvenile court she had discussed the bindover process with appellant's mother.

{¶ 30} In *Rodriguez*, this court addressed a juvenile court's failure to provide written notice of a probable cause hearing. We held that "while the record is devoid of any evidence indicating written notice was provided, it is obvious, nonetheless, that her legal custodians, as well as a number of her other family members, had actual notice of the bindover proceedings as they personally appeared in court in order to offer appellant their assistance, guidance, and support." *Rodriguez*, 2009-Ohio-4460 at ¶ 30. "As a result, even though the juvenile court failed to provide her legal custodians with written notice as required by R.C.

- 10 -

2152.12(G), due to their personal appearance at the hearings, they had sufficient and adequate notice of the charges and proceedings pending against their granddaughter." *Id.* "Therefore, because appellant's legal custodians actually attended the scheduled bindover proceedings, we find no prejudicial impact resulting from the juvenile court's failure to provide them with written notice of such." *Id.*

{¶ 31} In light of *Rodriguez* and given the fact appellant's mother actually attended the August 21, 2019 probable cause hearing, we find no prejudicial impact resulting from the fact the notice referenced an incorrect date for the hearing and only listed appellant's counsel, and the fact the record does not reflect when service was perfected on appellant's mother. We therefore find no prejudicial error.

{¶ 32} As to the juvenile court's alleged failure to serve the notice upon appellant's father, the Ohio Supreme Court recently held that service of the R.C. 2152.12(G) notice upon both parents is not necessary: "Regardless of [father's] paternity status, service upon [mother] alone would be sufficient. R.C. 1.43(A) (the 'singular includes the plural, and the plural includes the singular')." *Turner v. Hooks*, 152 Ohio St.3d 559, 2018-Ohio-556, ¶ 4, citing *Reynolds,* 2007-Ohio-4178.

{¶ 33} The issue in *Reynolds* was whether both parents were required to receive notice under R.C. 2152.12(G) and Juv.R. 30(D), or whether it was sufficient that one parent received notice and attended the hearing. The Tenth District Court of Appeals noted that

> R.C. 2152.12(G) does not define "parents," and does not indicate whether both parents are required to constitute sufficient notice and satisfy due process. Although a literal reading of "parents" would seem to require notice to both parents, we find that such a reading would render the use of the term illogical under some circumstances such as where only one parent is living or the identity of one parent is unknown. Under such hypothetical circumstances, clearly notice to a single parent would be sufficient. * * * Further, that the statute states that notice "shall" be given to the "parents," yet fails to indicate the proper procedure when notice to one parent is an

- 11 -

impossibility, demonstrates that "parents" should not be strictly interpreted to mean both parents.

*Reynolds* at ¶ 11. Continuing, the court of appeals held that although "it is better to give notice to both parents when possible, notice to one parent when the other parent's identity or whereabouts are unknown still serves to protect the juvenile and furthers the legislative goals of R.C. 2152.12(G)." *Id.* at ¶ 12. We agree with the Tenth District Court of Appeals' reasoning and analysis.

{¶ 34} Furthermore, appellant does not indicate how he was prejudiced by the lack of notice to his father. The absence of appellant's father from the proceedings had no effect on the outcome of the proceedings and appellant claims none. Appellant's mother received a copy of the bindover motion and attended the probable cause hearing. "There is no evidence that appellant's mother might have harbored any prejudice or ill feelings against her son that could have affected her alignment with him and compromised her duty to protect the best interests of her child." *Reynolds*, 2007-Ohio-4178 at ¶ 14.

{¶ 35} In light of the foregoing, we find no prejudicial impact resulting from the juvenile court's failure to provide appellant's father with written notice of the August 21, 2019 probable cause hearing, and therefore find no prejudicial error.

{¶ 36} In his third issue for review, appellant argues that the cumulative effect of the errors described above violated his due process rights and deprived him of a fair probable cause hearing.

{¶ 37} Under the doctrine of cumulative errors, a reviewing court "will reverse a conviction when the cumulative effect of errors deprives a defendant of a fair trial even though each of the instances of trial-court error does not individually constitute cause for reversal." *State v. Kirkland*, 140 Ohio St.3d 73, 2014-Ohio-1966, ¶ 140. Appellant cites no authority for the proposition that the cumulative error doctrine applies to juvenile bindover

proceedings. *See State v. Fuell,* 12th Dist. Clermont No. CA2020-02-008, 2021-Ohio-1627. However, because we have found no merit to appellant's first and second issues for review as discussed above, appellant cannot demonstrate cumulative error. Appellant was therefore not deprived of a fair probable cause hearing.

{¶ 38} Appellant's first assignment of error is overruled.

{¶ 39} Assignment of Error No. 2:

{¶ 40} THE TRIAL COURT ERRED BY SENTENCING SMITH TO LIFE IMPRISONMENT WITH THE POSSIBILITY OF PAROLE UNDER THE CHILD-RAPE STATUTE, AND BY IMPOSING LIFETIME PAROLE SUPERVISION.

{¶ 41} Appellant argues, and the state concedes, that in sentencing him to 15 years to life in prison for murder, the trial court wrongly referred to R.C. 2971.03(B)(1)(b) and improperly imposed mandatory lifetime parole supervision by the Adult Parole Authority.

{¶ 42} A trial court speaks through its journal entry. *State v. Henderson*, 161 Ohio St.3d 285, 2020-Ohio-4784, ¶ 39. The sentencing entry provides that appellant was sentenced to 15 years to life in prison "pursuant to R.C. 2971.03(B)(1)(b)." That sentencing statute applies to a rape offender where the victim was less than ten years old and is clearly inapplicable here. The sentencing entry further provides that appellant's sentence for murder "includes Mandatory Lifetime Parole supervision by the Adult Parole Authority pursuant to [R.C.] 2967.13." However, that statute applies to parole *eligibility*, not to parole supervision after release from prison. Furthermore, no statute provides for a lifetime parole supervision in Ohio. Rather, the Adult Parole Authority may grant a paroled prisoner final release, but if the paroled prisoner has been sentenced to life in prison, "the authority shall not grant a final release earlier than five years after the paroled prisoner is released from the institution on parole." R.C. 2967.16(A).

{¶ 43} We find that the two errors made by the trial court in its sentencing entry are

clerical errors that "may be corrected by the court at any time." Crim.R. 36. Upon remand, the sentencing entry shall reflect that appellant is being sentenced for murder pursuant to R.C. 2929.02(B)(1). The trial court is further instructed to correct the improper imposition of lifetime parole supervision by the Adult Parole Authority.

{¶ 44} Appellant's second assignment of error is sustained.

{¶ 45} Assignment of Error No. 3:

{¶ 46} THE JUVENILE COURT SET AN UNCONSTITUTIONAL BOND.

{¶ 47} As stated above, the juvenile court set bond at $1,000,000 for the murder charge, $10,000 for each firearm specification, and $10,000 for the tampering with evidence charge. Appellant argues the juvenile court erred by setting bond for the firearm specifications as they are not criminal offenses but sentence enhancements, and by imposing a cash-only bond which is unconstitutional under the Ohio Constitution.

{¶ 48} Appellant is correct that a firearm specification is a sentence enhancement that attaches to a predicate offense, not a separate criminal offense. *State v. Ford*, 128 Ohio St.3d 398, 2011-Ohio-765, ¶ 16-17. Appellant is also correct that cash-only bail is unconstitutional under Section 9, Article I of the Ohio Constitution. *Smith v. Leis*, 106 Ohio St.3d 309, 2005-Ohio-5125, ¶ 1. However, it is well established that once a defendant has been convicted, "'any error concerning the issue of pretrial bail is moot.'" *State v. Drummond*, 111 Ohio St.3d 14, 2006-Ohio-5084, ¶ 206, quoting *State v. Patterson*, 110 Ohio App.3d 264, 271 (10th Dist.1996). The proper procedure for seeking relief for excessive or improper pretrial bail is through habeas corpus proceedings. *Patterson* at 272. Unlike the defendant in *Leis*, appellant did not seek this remedy.[2] Accordingly, his third

---

2. In his reply brief, appellant asserts that his bond issues fall within the "capable of repetition, yet evading review" exception to the mootness doctrine and cites *Smith v. Leis*, 106 Ohio St.3d 309, 2005-Ohio-5125, in support. In *Leis*, the Ohio Supreme Court found that while the bail issue was moot as to Smith, it was nonetheless properly before the court because it presented a properly debatable constitutional issue and the

assignment of error is overruled.  *Id.*; *State v. Santiago*, 8th Dist. Cuyahoga No. 101612, 2015-Ohio-1301, ¶ 15; *State v. Smith*, 2d Dist. Montgomery No. 28265, 2019-Ohio-5015, ¶ 44-45.

{¶ 49} Judgment reversed in part, and remanded with instructions to the trial court to correct the misstated statutory provision regarding appellant's sentence for murder and the improper imposition of lifetime parole supervision by the Adult Parole Authority.  In all other respects, the judgment of the trial court is affirmed.

S. POWELL and HENDRICKSON, JJ., concur.

---

issue was of great public or general interest as it affected the types of bail that trial courts are authorized to grant in criminal cases throughout the state.  *Id.* at ¶ 15.  The supreme court noted, however, that the case did not appear to fall within the "capable of repetition, yet evading review" mootness exception because the exception "further requires 'a reasonable expectation that *the same complaining party* will be subject to the same action again.'"  (Emphasis sic) *Id.* at ¶ 16, fn. 1, quoting *State ex rel. Calvary v. Upper Arlington*, 89 Ohio St.3d 229, 231 (2000).  "With his lengthy criminal sentence, it is unlikely that Smith again will be subject to the same cash-only preconviction bail."  *Leis* at ¶ 16, fn. 1.  Given appellant's lengthy criminal sentence, it is unlikely he again will be subject to the same cash-only and firearm specification preconviction bail. Consequently, the "capable of repetition, yet evading review" exception to the mootness doctrine is inapplicable here.