[Cite as *State v. Hollie*, 2022-Ohio-872.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NOS. CA2021-03-025<br>CA2021-04-033 |
| | : | |
| - vs - | : | O P I N I O N<br>3/21/2022 |
| | : | |
| ERIC HOLLIE, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CR2020-05-0630

Michael T. Gmoser, Butler County Prosecuting Attorney, and John C. Heinkel, Assistant Prosecuting Attorney, for appellee.

Repper-Pagan Law, Ltd., and Christopher J. Pagan, for appellant.

**PIPER, P.J.**

{¶1} Appellant, Eric Hollie, appeals his conviction and sentence in the Butler County Court of Common Pleas for one count of aggravated robbery. In Hollie's appeal, he challenges (1) the juvenile court's initial bindover proceeding; (2) the juvenile court's denial of jurisdiction resulting in its second transfer to the common pleas court for implementation of its sentence without a statutorily required amenability hearing; and (3) the constitutionality of transferring Hollie's case to the common pleas court without an amenability hearing.

**Factual background**

{¶2} On March 5, 2020, Hollie robbed a GameStop store of two game cards and approximately $450 in cash while possessing and brandishing an unspecified type of gun. The gun in question was never recovered. Hollie, who was 17 years old at the time, was apprehended shortly thereafter and taken to the Butler County Detention Center. A complaint was filed against him in the juvenile court for committing a crime that if charged as an adult would constitute aggravated robbery.

{¶3} The state filed a notice of its intent to request the juvenile court to relinquish jurisdiction to the general division of common pleas court pursuant to Ohio's mandatory bindover procedures outlined in R.C. Chapter 2152. The juvenile court set a probable cause hearing on the state's motion for June 2, 2020.

{¶4} On May 20, 2020, the Superintendent of Corrections alleged that Hollie displayed assaultive behavior towards another resident and requested that Hollie be transferred to the Butler County Jail. The next day, the parties appeared before the juvenile court for a hearing. Prior to addressing the allegations, Hollie's counsel advised the juvenile court that Hollie had decided to waive his right to the June 2, 2020, probable cause hearing. Following a colloquy, the juvenile court accepted Hollie's waiver and transferred the case to the general division of common pleas court. Once subjected to the general division's jurisdiction, Hollie was indicted for aggravated robbery in violation of R.C. 2911.01(A)(1), a first-degree felony, with an accompanying three-year firearm specification.

{¶5} On November 18, 2018, Hollie pled guilty to aggravated robbery in exchange for the dismissal of the firearm specification. As relevant here, both the indictment and bill of particulars alleged that Hollie possessed a "deadly weapon" in connection with the robbery. The bill of particulars stated that the "deadly weapon" was "a gun" that Hollie

brandished at the clerk's head. During the plea hearing, the prosecutor read the statement of facts and stated that Hollie possessed a "deadly weapon" or "gun" during the commission of the offense. At no point did the state mention that Hollie possessed or used a "firearm." The common pleas court accepted Hollie's plea, ordered a presentence investigative report ("PSI"), and set the matter for sentencing. In the PSI Hollie stated that the "gun" that he used in the commission of the offense was a "BB gun."

{¶6} On December 16, 2020, the common pleas court held a sentencing hearing and sentenced Hollie to a minimum term of three years in prison to a maximum potential term of four-and-one-half years in prison. Because the firearm specification had been dismissed and appellant pled guilty to the possession of a "deadly weapon," not a "firearm," the common pleas court determined that Hollie was currently subject to discretionary bindover, rather than mandatory bindover, and transferred jurisdiction back to the juvenile court for an amenability hearing.

{¶7} On December 23, 2020, the state filed a notice requesting the juvenile court transfer the case back to the common pleas court so that Hollie could be "subjected to sentencing by that Court." During a hearing, the state argued that the common pleas court erred by transferring the case back to the juvenile court provided that Hollie pled guilty to holding "a gun to the Gamestop clerk's head" and forcing her to put money on game cards and for taking the cash from the cash registers. Hollie disagreed and argued that he pled guilty to the use of a "deadly weapon," not a "firearm." He submitted that the common pleas court correctly transferred jurisdiction to the juvenile court for an amenability hearing.

{¶8} On February 24, 2021, the juvenile court issued a decision finding the common pleas court had erred by transferring the case back to the juvenile court. The juvenile court found that it did not have jurisdiction to hear the case because Hollie entered

a guilty plea to "essentially the same set of facts that he was originally charged with in the Juvenile Division," which was treated as a mandatory bindover without conducting an amenability hearing. The juvenile court transferred the case for a second time to the common pleas court for imposition of sentence.

{¶9} On March 10, 2021, the common pleas court held a hearing and reimposed the original sentence it had stayed. Hollie then filed an appeal from the common pleas court's decision. The common pleas court filed nunc pro tunc entries memorializing the juvenile court's order concerning jurisdiction.[1] We now consider Hollie's appeal in which he raises three assignments of error for review. For ease of discussion, we will address Hollie's assignments of error out of order.

{¶10} Assignment of Error No. 2:

{¶11} THE JUVENILE COURT ERRED BY DISREGARDING HOLLIE'S PROCEDURAL PROTECTIONS AT THE BINDOVER HEARING.

{¶12} In Hollie's second assignment of error, he argues the juvenile court violated Juv.R. 3(E) and the supreme court's decision in *State v. D.W.*, 133 Ohio St.3d 434, 2012-Ohio-4544, by allowing him to waive his right to a probable cause hearing without a written waiver. He also claims that his waiver of the probable cause hearing was not done knowingly, intelligently, or voluntarily.

**Procedural Protections**

{¶13} This court has previously considered a nearly identical argument in *State v. Smith*, 12th Dist. Butler No. CA2020-09-101, 2021-Ohio-2982. To determine whether a

---

1. This court consolidated two appeals in an entry filed on April 23, 2021. Subsequently, this court remanded this matter back to the common pleas court "for the purpose of permitting the common pleas court to enter final judgments, amended if necessary, with the cases appellant seeks to appeal." On June 24, 2021, the common pleas court entered a nunc pro tunc entry memorializing the juvenile court's decision and sentencing Hollie to prison.

waiver is valid, a juvenile court must "engage in a meaningful dialogue with the juvenile" to "ensure that the juvenile fully understands, and intentionally and intelligently relinquishes the right to [a hearing]." *Id.* at ¶ 17. The supreme court established a two-step process a juvenile court uses to determine the validity of the waiver. *D.W.* at ¶ 33.

{¶14} "First, before being transferred, the juvenile may waive the right to a * * * hearing only if the waiver is expressly stated on the record and through counsel." *Id.* at ¶ 34. Second,

> the juvenile court must determine that the waiver is offered knowingly, voluntarily, and intelligently. Proper determination must include a colloquy with the juvenile and must occur on the record. The colloquy allows the juvenile court to fulfill its parens patriae duty by ensuring that the juvenile fully understands and intentionally and intelligently relinquishes the right to an amenability hearing. And it allows the judge "to engage in a meaningful dialogue with the juvenile," to guarantee that the juvenile's due process rights are protected.

*Id.* at ¶ 37 (Citation omitted). "[T]he supreme court's two-step process does not require that the waiver be in writing." *Smith* at ¶ 17.

{¶15} In this case, the first step of the test was met as Hollie, both personally and through counsel, expressly stated on the record that he waived his right to a probable cause hearing. The second step of the waiver test was also met as the juvenile court engaged in a colloquy on the record with Hollie to determine whether the waiver was made knowingly, intelligently, and voluntarily. The juvenile court asked whether Hollie discussed the waiver of probable cause with his attorney and understood that if the juvenile court found probable cause, the case would be transferred to the general division of the common pleas court. Hollie responded affirmatively. Hollie confirmed that he understood the consequences of making a probable cause finding. He then denied being pressured into waiving the probable cause hearing or to being under the influence of drugs or alcohol. The juvenile court then

asked once more if Hollie had spoken to his attorney and whether he agreed with her advice. Hollie thereafter confirmed that he was asking the court to waive the probable cause hearing.

{¶16} We find the juvenile court sufficiently ensured that Hollie's waiver of the right to a probable cause hearing was made knowingly, intelligently, and voluntarily. The juvenile court appropriately inquired of Hollie's intentions as well as the significance of the waiver. There was no indication during the hearing that Hollie had any intellectual or learning deficits that would have prevented his understanding of the juvenile court's inquiries. Hollie responded unequivocally that he had discussed the waiver of the probable cause hearing with his counsel and was satisfied with her advice. Accordingly, the record clearly supports a finding that Hollie understood that he had a right to a probable cause hearing and that he intended to relinquish that right. The juvenile court did not disregard Hollie's procedural protections. Hollie's second assignment of error is overruled.

{¶17} Assignment of Error No. 1:

{¶18} THE JUVENILE COURT LACKS JURISDICTION TO OVERRULE THE COMMON-PLEAS JUDGE'S FACTUAL AND LEGAL DETERMINATIONS THAT A CASE MUST RETURN TO JUVENILE COURT UNDER THE REVERSE-BINDOVER PROCEDURE. AND THE COMMON-PLEAS COURT LACKS JURISDICTION TO IMPOSE AN ADULT SENTENCE WITHOUT A REQUIRED AMENABILITY HEARING.

{¶19} In Hollie's first assignment of error, he argues the juvenile court erred by denying it had subject matter jurisdiction, which resulted in not conducting an amenability hearing following the reverse-bindover procedure.

{¶20} Juvenile courts have exclusive initial subject matter jurisdiction in matters involving a child alleged delinquent for committing acts that would constitute a felony

offense if committed by an adult. *State v. Golphin*, 81 Ohio St.3d 543, 545 (1998). However, jurisdiction may be transferred to the general division of the common pleas court under circumstances that are either mandatory or discretionary. *State v. Stephens*, 12th Dist. Butler No. CA2020-01-008, 2020-Ohio-5395, ¶ 9.

**I. Bindover**

{¶21} R.C. 2152.10(A) sets forth which juvenile cases are subject to mandatory bindover, including cases where the juvenile is at least 16 years old and is charged with a "category two offense" with a firearm, if there is probable cause to believe that the juvenile committed the act charged. R.C. 2152.10(A)(2)(b). In contrast, R.C. 2152.10(B) sets forth which cases the juvenile court maintains discretion to transfer its jurisdiction to the common pleas court. In those cases, the juvenile court may only transfer jurisdiction if it makes certain findings under R.C. 2152.12(B).

{¶22} Hollie was 17 years old at the time of the offense and was alleged to have committed conduct that if charged as an adult would constitute aggravated robbery in violation of R.C. 2911.01(A)(1), a category two offense. On March 13, 2020, the state filed its intent to bindover or relinquish jurisdiction to the common pleas court. In its filing the state asserted the case was a "mandatory transfer pursuant to R.C. 2152.12(A) and R.C. 2152.10(A)(2)(b)."

{¶23} For reasons that are unclear, the state's entry did not indicate whether this supposed mandatory transfer was related to the unrecovered "gun" that was used during the aggravated robbery—the same gun that Hollie later identified as a "BB gun." Despite this uncertainty, Hollie waived the probable cause hearing and the juvenile court bound the matter over to the common pleas court where he was indicted for aggravated robbery with an accompanying firearm specification.

{¶24} Despite the initial bindover, Hollie ultimately pled guilty to, and was convicted of, aggravated robbery *without* a firearm specification. Critically, Hollie did not plead guilty to an offense involving a "firearm." As mentioned before, the state used the terms "deadly weapon" or "gun" at all relevant times. Since Hollie pled guilty to a category two offense involving a "deadly weapon" or "gun," as opposed to a "firearm," he was eligible for a reverse bindover.[2] *State v. Grant*, 9th Dist. Summit No. 29259, 2019-Ohio-3561, ¶ 7.

## II. Reverse Bindover

{¶25} Pursuant to R.C. 2152.121, the common pleas court is required to consider how the child came to be tried in adult court and compare the original allegations within the juvenile complaint with the actual conviction. R.C. 2152.121(B). "In other words, the trial court must determine what the juvenile court would have been required to do with the case if the juvenile had been charged with only those offenses for which convictions were obtained." *State v. D.B.*, 150 Ohio St.3d 452, 2017-Ohio-6952, ¶ 12. If the resulting offense would have permitted a discretionary rather than mandatory transfer, the trial court is required to impose sentence, stay the sentence, and return the matter to the juvenile court. R.C. 2152.121(B). In the instant matter, the common pleas court properly followed all the controlling statutes.

{¶26} "This process allows the juvenile court to assess, using its full discretion, whether the child would benefit from rehabilitative measures outside of the adult system even if the juvenile court was not afforded that initial opportunity due to the mandatory bindover." *State v. Abdullah*, 7th Dist. Mahoning Nos. 19 MA 0011 and 19 MA 0012, 2020-Ohio-4813, ¶ 16.

---

2. This would not be the case had Hollie pled guilty to the use of a "firearm" during the commission of the offense. *State v. Brookshire*, 2d Dist. Montgomery No. 25859, 2014-Ohio-5368, ¶ 7.

{¶27} The state is permitted to object to the juvenile court's disposition and request that the sentence imposed upon the child by the common pleas court be invoked. R.C. 2152.121(B)(3)(b). Should the state object and file a motion asking for imposition of the trial court's sentence, "the juvenile court *shall hold* a hearing to determine whether the child is not amenable to care or rehabilitation within the juvenile system and whether the safety of the community may require that the child be subject solely to adult sanctions." *Id.* (Emphasis added). In so analyzing the issue, the statutes require the juvenile court to balance the relevant factors set forth in R.C. 2152.12(D) versus R.C. 2152.12(E). *Stephens*, 2020-Ohio-5395 at ¶ 16.

### III. Review of Hollie's Reverse Bindover

{¶28} After the common pleas court transferred jurisdiction to the juvenile court, the state objected and requested that the case be returned to the common pleas court to implement its sentence, alleging that Hollie was not amenable to care or rehabilitation in the juvenile system. The state later filed another objection arguing that the case should not have been transferred back to the juvenile court in the first place. The state's argument to the juvenile court in this regard was misguided.

### A. Denial of jurisdiction

{¶29} The juvenile court heard argument on the state's motion but declined to hold an amenability hearing. Instead, the juvenile court issued a decision denying jurisdiction on the basis that Hollie entered a guilty plea to "essentially the same set of facts that he was originally charge with in the Juvenile Division, which were eventually transferred pursuant to a mandatory bindover." The juvenile court then cited two cases where the operability of a firearm specification was proven by circumstantial evidence. Although recognizing the distinction between a "firearm" and a "gun," the juvenile court found that it

was a distinction without a difference. Additionally, the juvenile court found that Hollie's waiver of his probable cause hearing was a "stipulation" that he factually used a firearm to facilitate the commission of the offense.

{¶30} Following review, we conclude the juvenile court erred when it refused jurisdiction and transferred the case back to the common pleas court without conducting an amenability hearing. Although the weapon Hollie possessed was never recovered, it is without question that the state did not secure a conviction for aggravated robbery involving a "firearm" as specified in R.C. 2152.10(A)(2)(b).[3]

### B. The difference between a gun and a firearm

{¶31} The term "firearm" is defined in the Revised Code as "any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant. 'Firearm' includes an unloaded firearm, and any firearm that is inoperable but that can readily be rendered operable." R.C. 2923.11.

{¶32} The supreme court has held that the terms "deadly weapon" and "firearm" are not synonymous. *State v. Gaines*, 46 Ohio St.3d 65, 68 (1989), modified on other grounds by *State v. Murphy*, 49 Ohio St.3d 206, 210, (1990). In addition, although a "gun," or even a "BB gun" may be considered a "deadly weapon," the term "gun" itself is not statutorily defined. *See, e.g., State v. White*, 8th Dist. Cuyahoga No. 92972, 2010-Ohio-2342, ¶ 5 (a BB gun can be a deadly weapon because the body of the gun itself can be used to bludgeon); *State v. Brown*, 101 Ohio App.3d 784, 788 (1st Dist.1995) (whether a BB gun is a deadly weapon is a factual issue to be determined by the trier of fact). BB guns in general do not meet the definition of firearm. *Gaines* at ¶ 68; *State v. Hanning*, 89 Ohio St.3d 86,

---

3. As it relates to delinquent children, R.C. 2152.02 specifies that "firearm" has the same meaning as in R.C. 2923.11.

90-91 (2000).

{¶33} The juvenile court's decision did not consider the statutory definition of "firearm" but instead relied on *State v. Wilson*, 12th Dist. Clermont Case No. CA2001-09-072, 2002-Ohio-4709, ¶ 38 and *State v. Gest*, 108 Ohio App.3d 248, 263 (8th Dist.1995). However, neither of those cases are applicable to the facts herein. Those cases addressed whether operability of a firearm can be proven by circumstantial evidence. As this court has stated previously, a firearm specification can be proven beyond a reasonable doubt by circumstantial evidence. *State v. Roberts*, 12th Dist. Warren No. CA2020-12-089, 2021-Ohio-3073, ¶ 28. Rather, this case involves a guilty plea in which Hollie pled guilty to the use of a "deadly weapon." During the plea hearing, the state never sought to establish that Hollie possessed a "firearm," instead choosing the terms "deadly weapon" or "gun." Accordingly, we find *Wilson* and *Gest* are simply not applicable.[4]

### C. Stipulation as to firearm

{¶34} We further disagree with the juvenile court's suggestion that Hollie stipulated to the possession of a firearm when he waived his probable cause hearing in order to be bound over. It is well established that a finding of probable cause does not mean that the minor is guilty of the offense charged, it simply finds the existence of probable cause to so believe. *State v. Iacona*, 93 Ohio St.3d 83, 93 (2001). The probable cause component does not provide evidence proving guilt beyond a reasonable doubt. *State v. Fuell*, 12th Dist. Clermont No. CA2020-02-008, 2021-Ohio-1627, ¶ 42.[5]

{¶35} In this case, Hollie did not stipulate to the possession of a firearm. We are

___

4. Nowhere in these proceedings, either in juvenile court or in common pleas court, was there factfinding of circumstantial evidence to determine the existence of a firearm within the statutory definition of R.C. 2923.11.

5. Similarly, the waiver of a probable cause hearing is not an admission of facts but rather the defendant's acquiescence that the state has alleged facts sufficient to have a matter bound over. *State v. Harwell*, 10th Dist. Franklin No. 20AP-5, 2020-Ohio-6880, ¶ 11.

aware of some cases where juvenile courts have asked juvenile offenders to offer a stipulation to the facts as supporting probable cause, however, review of the colloquy below reveals that no such stipulation occurred. *See State v. J.T.S.*, 10th Dist. Franklin No. 14AP-516, 2015-Ohio-1103, ¶ 33 (where the juvenile's waiver of a probable-cause hearing and stipulation of probable cause was knowing, intelligent, and voluntary, the juvenile court did not err in accepting the stipulation and transferring the case to adult court); *State v. Zarlengo*, 7th Dist. Mahoning No. 20 MA 0036, 2021-Ohio-4631, ¶ 38 (a juvenile can stipulate to probable cause).

{¶36} In the matter sub judice, Hollie did not enter into any stipulation with regard to use of a firearm during the commission of an aggravated robbery. Hollie only waived his right to a probable cause hearing. Nevertheless, even if Hollie had stipulated during his waiver of the probable cause hearing, it would not amount to a stipulation of guilt. "A stipulation that there was probable cause to find the violations is simply not equivalent to finding that the state had proven those violations." *Harwell*, 2020-Ohio-6880 at ¶ 11.

### D. Juvenile Court as Statutory Court

{¶37} We further note that the statutory scheme prohibits the action taken by the juvenile court. "Ohio's juvenile courts are statutory courts, created by the General Assembly." *In re Z.R.*, 144 Ohio St.3d 380, ¶ 14 (2015). "As a statutory court, the juvenile court has limited jurisdiction, and it can exercise only the authority conferred upon it by the General Assembly." *Id.*

{¶38} R.C. 2152.121 mandates that the common pleas court consider how the child came to be tried in the adult court compared to the original actions within the juvenile complaint. The common pleas court then determines whether the resulting offense would have permitted discretionary rather than mandatory transfer. *Id.* If the common pleas court

determines that the offense would have permitted discretionary transfer, the trial court is required to impose sentence, stay the sentence, and return the matter to the juvenile court. R.C. 2152.121(B)(3). Upon doing so, the common pleas court transfers the case back to the juvenile court for further proceedings in accordance with R.C. 2152.121(B)(3)(a)-(b). *See State v. Ferguson*, 2d Dist. Montgomery No. 27032, 2017-Ohio-7930, ¶ 90 ("[T]he procedures set forth in R.C. 2152.121 are clear and unambiguous, and the adult court does not have the discretion to ignore its mandates").

{¶39} Because Hollie's conviction would only have permitted discretionary transfer, the common pleas court appropriately imposed a sentence, stayed the sentence, and transferred the matter to the juvenile court. At that point, the juvenile court had subject-matter jurisdiction. The juvenile court was then required to "hold a hearing to determine whether the child is not amenable to care or rehabilitation within the juvenile system and whether the safety of the community may require that the child be subject solely to adult sanctions." R.C. 2152.121(B)(3)(b). Instead of holding the amenability hearing required by the statute, the juvenile court refused jurisdiction upon making a finding not supported by the record. There is no statutory authority for a juvenile court to refuse subject-matter jurisdiction in circumstances as presented here, accordingly, we sustain Hollie's first assignment of error.

{¶40} Assignment of Error No. 3:

{¶41} IT IS UNCONSTITUTIONAL TO AND [sic] JUVENILE'S CASE TO ADULT COURT WITHOUT AN AMENABILITY HEARING.

{¶42} Hollie's third assignment of error argues that it is unconstitutional to transfer his case from the juvenile court back to the common pleas court without an amenability hearing. However, based upon our resolution of Hollie's first assignment of error, we find

- 13 -

this issue is now moot.

{¶**43**}  This matter is remanded to the common pleas court with directions to transfer the case to the juvenile court for an amenability hearing consistent with R.C. 2152.121(B)(3).

{¶**44**}  Judgment affirmed in part, reversed in part, and remanded.

HENDRICKSON and BYRNE, JJ., concur.